CORRIGAN, Respondent, vs. WEST DIVISION STEAMSHIP COMPANY, Appellant.

*September 24—October 15, 1907.*

*Master and servant: Injuries to servant: Assumption of risk: Bill of exceptions: Form: Statutes: Waiver of objections: Appeals: Motion to dismiss.*

1. In an action by a servant against a master for personal injuries, if the servant was guilty of that species of contributory negligence known as assumption of risk he cannot recover.

2. In an action by a servant against a master for personal injuries, under the undisputed evidence, stated in the opinion, it was *held* that the plaintiff knew and appreciated, or ought to have known and appreciated, all the dangers incident to the work in which he was engaged at the time of injury, and therefore assumed the risk.

3. Where it is established as matter of law, upon undisputed evidence, that a plaintiff servant assumed the risk of his employment, the court should grant a motion for a directed verdict in favor of defendant.

4. Although sec. 2873m, Stats. (ch. 547, Laws of 1907), requires that a bill of exceptions shall include all the testimony set forth by question and answer as shown by the transcript of the reporter's notes, unless the parties to the action stipulate other-

.wise, it does not repeal nor is it in conflict with sec. 2874, Stats. (1898)—providing for service of a proposed bill, proposed amendments, and the settlement and signing thereof by the judge who tried the cause,—and hence a bill of exceptions was *held* regularly settled, where the respondent served proposed amendments to the proposed bill, which amendments contained no objection or reference in any form to the fact that the testimony in the bill had been reduced to narrative form, the bill having been afterwards settled and signed upon due notice.

5. Where a bill of exceptions has been regularly settled, a motion to strike it out should be denied.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN K. PARISH, Judge. *Reversed.*

This action was brought to recover for personal injuries. The complaint alleges, in substance, that the defendant was the owner of the steamer Fred Pabst, and that on the 21st day of December, 1904, at Milwaukee, Wisconsin, plaintiff was in the employ of the defendant for the purpose of removing certain hatch covers from the hatchways of the steamer; that the defendant negligently permitted the deck of the steamer to be covered with ice and become slippery and unsafe, and permitted ice to form under the hatch cover so as to make it dangerous to remove the same; that defendant failed to provide proper and usual poles to use in lifting the covers; that because of such negligence plaintiff was drawn into the hold of the steamer through the hatchway and was injured. The answer put in issue the allegations of the complaint and set up contributory negligence on the part of plaintiff, and further alleged that the complaint states grounds of negligence not included in the notice of injury, namely, the allegations concerning hatch poles, and that plaintiff is barred from claiming such grounds of negligence by par. 5, sec. 4222, Stats. (1898). Upon the trial the complaint was amended, against the defendant's objections, by adding the further ground of negligence that the defendant negligently failed to provide a sufficient number of men to assist in removing the hatch covers, and negligently fur-

nished a man of insufficient strength and incompetent to
assist in removing the hatch covers. This amendment was
objected to by defendant's counsel for the reason that it was
not embraced in the notice of injury given and that the time
for giving notice had expired before the present action was
commenced. Motions for nonsuit and directed verdict were
made, overruled, and due exceptions taken. The jury re-
turned a special verdict finding negligence of defendant and
no negligence on the part of plaintiff and assessing plaintiff's
damages at $3,000. Judgment was entered upon the verdict,
from which this appeal was taken.

For the appellant there was a brief by *Vilas & Vilas,* and
oral argument by *C. A. Vilas.*

For the respondent there was a brief by *Glicksman & Gold,*
and oral argument by *W. L. Gold.*

KERWIN, J. The defendant at the close of the plaintiff's
evidence moved for a nonsuit, and at the close of all the evi-
dence for a directed verdict. These motions were overruled
and due exceptions taken, and the denial of each motion is
assigned as error. These alleged errors may be considered
together, since they raise the question whether plaintiff made
a case for the jury. It is contended by counsel for appellant,
under this head, that upon the undisputed evidence the de-
fendant was not guilty of negligence, and that the plaintiff
was guilty of contributory negligence and assumed the risk.

1. If the plaintiff was guilty of that species of contribu-
tory negligence known as assumption of risk he cannot re-
cover, and the first question to be determined is whether upon
the undisputed evidence he assumed the risk. The evidence
establishes without dispute that the plaintiff was employed
by defendant to assist in removing hatch covers from defend-
ant's vessel known as the steamer Fred Pabst, which at the
time of the injury, December 21, 1904, was in the Milwau-
kee river at or near the docks of the Milwaukee Western

Fuel Company, in the city of Milwaukee. The hatchways in question were about thirty feet long by eight feet wide. There were five or six parts, or sections, to each hatch cover. On top of each part, or section, were four rings four or five inches in diameter, one on or near each corner. These covers were made of oak and pine or oak and fir plank or timber nailed together, and were about four inches thick and weighed from 250 to 400 pounds and rested on what is known as the hatch combs, about six inches above the deck, and were flush with the hatch comb and did not overhang the deck. The hatch comb was made of timber. The plaintiff began work with two helpers at 7 a. m. December 21, 1904, cleaning up the boat, and worked during part of the forenoon on the inside of the boat and also cleaned snow and ice from the deck. "There was sleet and ice on everything." In the afternoon he and the helpers began moving the hatch covers for the purpose of admitting light into the hold. The plaintiff testified:

"After cleaning away the snow and ice so we could get at them, we lifted two covers, or two sections of this cover, and shoved them aside out of our way, on top of the other covers. I was on one side, I and this man Jones was on one side. The other man was on the opposite side, on the opposite edge of the section, across the hatchway. Jones and I each had hold of a separate ring on the corner at our end of the hatch, and this other man had hold of one ring on the other end. That is the way we lifted those hatches. When we came to lift the hatch which fell, I suppose we proceeded just as before. I held onto the ring just as I did the other. This man opposite me, who had hold of the ring . . . when he let go said: 'Look out!' . . . His end dropped into the hatchway first, then the hatchway fell and pushed into it, . . . and it went into the hold, and I went with it. When the hatch section entered through the hold there was but one man on the opposite side, and it twisted on that side and caught me in the ring. After the side opposite me started to go through the hold, I did not have time to pull my hand out. I could not pull my hand out of the ring. . . . The covers fit pretty close, and the snow cannot get in very well, but they were frozen. They could be

frozen because water can get in where the snow cannot. They were frozen to the cleat; could tell by lifting it, it was frozen, it was tight. I suppose the one on which I was injured was frozen the same as the other section."

He also testified that he did not know that the cover which was being removed at the time of the injury was frozen to the hatch and that he had never removed hatch covers before. The evidence further shows that plaintiff was about fifty-five years of age, a carpenter by trade, and had worked at his trade for several years off and on before the injury; that he worked generally at his trade during the summer; that he also worked in various other capacities, farming, taking out timber and ties, and in lumbering operations, also in the teaming business; was also in business for himself in Milwaukee hauling wood and coal from docks and from wood and coal yards to customers.

The wrongs complained of, and upon which plaintiff seeks to recover, are that defendant failed to furnish hatch poles and sufficient men to facilitate the removal of the hatch covers, and suffered the deck and hatchway of the steamer Fred Pabst to be covered with ice, and failed to furnish a safe place for plaintiff to work. It is manifest that if plaintiff knew, or ought to have known, the danger of the employment in which he was engaged, he cannot recover, regardless of the negligence of defendant. It is elementary that a servant assumes the ordinary risks of the employment in which he is engaged, and such other risks as he knows, or ought by the exercise of ordinary care to know and appreciate. Now the removal of the hatch covers was a very simple operation. There was nothing complicated about it and nothing that required skill or experience. It was a duty that could be performed by any ordinary laboring man. The plaintiff was a man of mature years, had large experience as a carpenter and in divers other pursuits well calculated to give him judgment, experience, and information in matters relating to the dan-

gers attendant upon the simple operation of removing the hatch covers. He knew from his experience in cleaning the deck in the forenoon that it was covered with ice, and he knew from the removal of two similar sections of hatch covers before the injury, approximately at least, the weight of the covers and the manner of their attachment to the hatchway. He knew also the difficulty, if there was difficulty, in removing the covers without hatch poles, and he knew the extent of his help in the operation. All these things he knew, or at least in the exercise of ordinary care ought to have known. It is insisted by counsel for respondent that in removing the first two covers they were only pushed aside, but the undisputed evidence shows that they were raised up at least a few inches and taken from their bearings, so the plaintiff had opportunity not only to know generally their weight and the difficulty attendant in removing them, but to observe the condition of the hatch comb, the opportunity for water to enter and ice accumulate, as well as the actual accumulation of ice. With his knowledge and experience and the condition of the deck, covered with ice, and the structure of the hatch combs and covering, he knew, or ought to have known, that the hatch covers would probably be frozen at their bearings. True, plaintiff testified that he did not know whether there was any ice under the third cover being removed at time of injury. But it is quite obvious from his own evidence that he had actual knowledge upon the subject. He testified that the first two covers fitted tight, the snow could not get in, but water could, and they were frozen. He could tell by lifting that they were frozen. The court is of the opinion that upon the undisputed evidence the plaintiff knew and appreciated, or ought to have known and appreciated, all the dangers incident to the work in which he was engaged at the time of injury, and therefore assumed the risk. *Sweet v. Ohio C. Co.* 78 Wis. 127, 47 N. W. 182;

*Showalter v. Fairbanks, M. & Co.* 88 Wis. 376, 60 N. W.
257; *Herold v. Pfister,* 92 Wis. 417, 66 N. W. 355; *Mielke
v. C. & N. W. R. Co.* 103 Wis. 1, 79 N. W. 22; *Hencke v.
Ellis,* 110 Wis. 532, 86 N. W. 171; *Koepcke v. Wis. B. & I.
Co.* 116 Wis. 92, 92 N. W. 558; *McMillan v. Spider Lake S.
M. & L. Co.* 115 Wis. 332, 91 N. W. 979; *Faber v. C. Reiss
C. Co.* 124 Wis. 554, 102 N. W. 1049. It being established
as matter of law, upon the undisputed evidence, that plaint-
iff assumed the risk, the court should have directed a verdict
for defendant.

2. A motion was made in this court to strike out the bill of
exceptions on the ground that it had not been settled accord-
ing to law. The proposed bill of exceptions was served July
12, 1907. Thereafter the plaintiff served proposed amend-
ments. The proposed amendments contained no objection or
reference in any form to the fact that the testimony in the
bill of exceptions had been reduced to narrative form. After-
wards, and on August 12th, a notice was served by appellant's
attorneys that the bill of exceptions would be settled on Au-
gust 16th and signed by the judge who tried the case. The
bill of exceptions was settled and signed by the judge in ac-
cordance with the notice. Sec. 2873m, Stats. (ch. 547, Laws
of 1907), requiring that the bill of exceptions shall include
all the testimony set forth by question and answer as shown
by the transcript of the reporter's notes, unless the parties
to the action stipulate otherwise, was passed and published
on July 12, 1907. It is claimed by counsel for respondent
that, because the testimony is not in the bill of exceptions
by question and answer, it is not before the court and cannot
be considered. Hence the bill of exceptions should be
stricken out. Doubtless, under sec. 2873m, Stats. (ch. 547,
Laws of 1907), a party is entitled, if he desires, to have the
bill of exceptions contain all the testimony by question and
answer as shown by the reporter's notes. But this law does

not repeal, or attempt to repeal, sec. 2874, Stats. (1898), which provides, in effect, that the party desiring to settle a bill of exceptions must prepare the same as proposed by him and serve on the adverse party, who may within ten days propose amendments; that either party may then serve a notice on the other that the bill of exceptions will be settled by the judge at a time and place stated; that, if no amendments be proposed, the bill shall be taken as agreed to, and may be signed by the judge, and, if any be served and accepted, the proposed bill so amended may be signed. We think it clear that sec. 2874, Stats. (1898), is in force and in no way in conflict with sec. 2873$m$, Stats. (ch. 547, Laws of 1907), and therefore the bill of exceptions was regularly settled. Here the respondent did not ask that the testimony be inserted in the bill of exceptions, which he had a right to do by proposed amendment, but proposed other amendments, and the bill was settled and signed in accordance with sec. 2874, Stats. (1898), which is in harmony with sec. 2873$m$, Stats. (ch. 547, Laws of 1907). We think the bill of exceptions was regularly settled and that the motion to strike it out should be denied.

From what has been said it follows that the judgment of the court below should be reversed.

*By the Court.*—The judgment of the court below is reversed, and the action remanded with instructions to dismiss the complaint.

TIMLIN, J., took no part.