STATE EX REL. KENOSHA GAS & ELECTRIC COMPANY, Respondent, vs. KENOSHA ELECTRIC RAILWAY COMPANY, Appellant.

*November 18, 1910—March 14, 1911.*

*Appeal: Matters considered:* Quo warranto: *Municipal corporations: Franchises: Electric current: Use of streets: Repeal of statutes: Public utilities: Railroad commission: Certificate of necessity: Constitutional law: Legislative power: Delegation.*

1. On an appeal only matters to some degree involved in the issues closed by the determination appealed from will be considered.
2. In a *quo warranto* action to test the claim of right to exercise a pretended franchise, the sole question triable is whether the defendant possess the right in fact referable to the grant.

3. A municipal ordinance empowering a corporation "to lay down in the ground, put on poles and otherwise attach wires or other suitable conductors for the transmission of electricity, upon, over, through, under and in the streets, lanes, alleys and public grounds" of the city, includes power to transmit electric current, using the public way as indicated, for all lawful purposes.

4. Ch. 499, Laws of 1907, as amended by ch. 180, Laws of 1909, so far as in conflict with sec. 1780b, Stats. (1898), supersedes the same.

5. Where an indeterminate permit has been acquired under the law of 1907 referred to, as amended, within the scope thereof the municipality is under disability to grant any conflicting franchise privilege, except in case of public necessity and convenience, the fact in that regard to be found as matter of fact and certified by the railroad rate commission prior to making such conflicting grant.

6. While the legislature cannot empower the railroad rate commission to exercise legislative power, it may clothe it with authority to administer a law requiring, as an incident to the administrative duty, the ascertainment of facts such as is required in passing upon an application for a certificate of convenience and necessity under the public utility law.

[Syllabus by MARSHALL, J.]

BARNES, J., WINSLOW, C. J., and SIEBECKER, J., dissent.

APPEAL from an order of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Affirmed.*

*Quo warranto* to oust defendant from an alleged franchise to use the streets of the city of Kenosha for distributing electric current for light, heat, and power.

The complaint, by appropriate allegations, sets forth the corporate character of the parties and that the purposes of each, according to its articles of organization, is to generate and distribute electric current for light, heat, and power, and all lawful purposes; and also the following, in substance: Relator is the owner of real and personal property in the city of Kenosha, Wisconsin, and a large taxpayer thereof. May 28, 1909, and at all times stated in the complaint, it maintained and operated in said city a plant for the generation and distribution of electric current for all lawful pur-

poses, and to that end occupied the streets of said city with
the essentials thereto, under an ordinance duly granted by
said city February 2, 1891, giving full power in that regard,
said ordinance in terms empowering the grantee of the fran-
chise "to lay down in the ground, put on poles and otherwise
attach wires or other suitable conductors for the transmission
of electricity, upon, over, through, under and in the streets,
lanes, alleys and public grounds of the city and to put in
place and furnish electric lights for public and private light-
ing." March 21, 1898, such ordinance was duly amended
but without narrowing at all the powers theretofore granted.
All rights conferred by the two ordinances were duly as-
signed to the relator and were possessed and enjoyed by it till
May 28, 1909, at which time, pursuant to ch. 499, Laws of
1907, and the amendment thereof the franchise rights and
privileges granted by such ordinance were, in form, surren-
dered, and relator received in lieu thereof from the state of
Wisconsin an indeterminate permit as a public utility of said
city of Kenosha for the purpose of furnishing electric light
and electric current to said city and the inhabitants thereof.
Since that time it has enjoyed all the privileges suggested
under such permit. June 7, 1909, said city, with knowledge
of the facts aforesaid, granted to defendant a franchise cov-
ering the same species of privilege theretofore enjoyed by the
relator. Prior thereto defendant did not secure from the
railroad commission of Wisconsin a declaration that public
convenience and necessity required said second public utility
in said city, by reason whereof said city did not have legal
capacity to make the grant to defendant. Nevertheless de-
fendant is giving out that it has legal right to enjoy all the
privileges so in form granted to it, and is in process of in-
stalling in said city the necessary equipment to that end, thus
occupying the territory heretofore exclusively occupied by
relator for the purpose aforesaid.

June 24, 1909, relator made due application to the attor-

340     SUPREME COURT OF WISCONSIN.     [MAR.

State ex rel. Kenosha G. & E. Co. v. Kenosha E. R. Co. 145 Wis. 337.

ney general of the state to prosecute defendant by action of *quo warranto,* in the name of the state, to oust defendant from the franchise and privileges it so pretended to have the right to enjoy, and to exclude it therefrom. Such application was refused.

The prayer of the complaint is that the court inquire by what right defendant holds and exercises the privileges and franchises attempted to be conferred on it by ordinance as aforesaid, and that it be adjudged to unlawfully hold and exercise the same, and that it be excluded therefrom, and relator recover costs and have such other relief as may be appropriate.

Defendant answered, admitting the alleged grant to it of June 7, 1909, and alleging that the grant was lawfully made; that it possessed full right thereto and is enjoying the same, and further answered, respecting the allegations as to surrender of relator's franchise, reception of an indeterminate permit in consideration of such surrender, enjoyment of privileges thereunder formerly possessed referable to the city ordinances, application to the attorney general to prosecute the defendant and refusal to do so, that it had neither knowledge nor information sufficient to form a belief as to whether they were true; and further answered to this effect,— April 19th defendant and the city made a binding contract in writing, whereby the former promised, for a consideration to be paid by the latter, to light the city streets with a specified number of electric lamps of a particular character for a period of five years, commencing August 9, 1909. For the purpose of carrying out such contract defendant has expended a large sum of money in procuring and installing the necessary equipment to do the municipal lighting. At the time of making such contract it was mutually contemplated that an ordinance granting defendant a franchise covering the privileges specified in the ordinance of June 7, 1909, would be passed, an application for which was made when

the contract was closed. Said ordinance was passed accordingly and accepted. At the time of such passage and acceptance the city of Kenosha possessed legal authority in respect to the matter. Defendant claims to possess the right to enjoy all privileges in form granted to it by such ordinance.

Plaintiff demurred to the defensive portion of the answer for insufficiency. The demurrer was sustained.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *H. E. Spaulding,* of counsel, and oral argument by *Mr. Spaulding* and *Mr. T. W. Spence.*

For the relator there was a brief by *Cavanagh & Barnes,* attorneys, and *Van Dyke, Rosecrantz, Shaw & Van Dyke,* of counsel, and oral argument by *Clarke M. Rosecrantz* and *James D. Shaw.*

For the *State* there was a brief by the *Attorney General* and *Russell Jackson,* deputy attorney general, and oral argument by *Mr. Jackson.*

The following opinions were filed January 10, 1911:

MARSHALL, J. The arguments of counsel seem to take a needlessly wide range. They extend to and include important matters which, it is thought, are not within the issues raised by the pleadings. However much counsel may wish to have such matters considered and decided, the court cannot well accommodate them. It is appropriate, and sometimes advisable, to decide each of several major propositions, and from each of several efficient viewpoints; even where the result can as certainly be reached by the decision of a single question upon a single ground. But it will hardly do to go so far as to decide matters not within the issues. These observations will render it unnecessary to give further reasons why some questions, industriously and ably presented by counsel, are not specially herein mentioned.

Do rights, or any of them, claimed by appellant under the

ordinance of June 7, 1909, conflict with those possessed by respondent under its ordinances mentioned in the complaint, and the perpetuating "indeterminate permit," so called, upon which it relies, assuming for now, that the legislation, in regard to such permit, in all respects, is valid, and that such permit affords to respondent all it purports to?

Counsel for appellant, saving all questions within the assumption referred to, seem to concede that there is no conflict as regards the generation and transmission of electric current for heat and power. That is based on the theory that in the granting clause of the ordinance under which appellant claims the right to use the street for the transmission of electric current "for the furnishing of electric heat and power" is expressly included, while, if that feature exists at all in the ordinances surrendered by respondent for its indeterminate permit, it is not found otherwise than in the words "transmission of electricity upon, over, through, under and in the streets, lanes, alleys and public grounds of the city of Kenosha, and to put in place and furnish electric lights for public and private lighting," etc. The idea of counsel is, that the indeterminate permit necessarily coincides with the franchise ordinances surrendered; that the language above quoted does not include a right as to heat and power, and, therefore, that the permit does not, and so, to that extent, appellant's ordinance does not, in any event, conflict therewith. Admitting, for the purposes of the case, that, on the facts stated in the complaint, the scope of the permit is referable to that of the ordinances given in exchange therefor, we are still far from conceding that the result follows which counsel claim.

That the language under consideration is not free from ambiguity, is quite evident. That is indicated by the fact that eminent counsel for the respective parties get a different idea therefrom. Another indication is in the fact that,

whereas as matter of common knowledge when the ordinances were passed, distribution of electricity from central stations for power, was general, it would be highly unreasonable to suppose the grantor and grantee of respondent's franchise did not intend to cover that important feature. There is a third indication in the fact, apparent from the complaint, that respondent's business, under the ordinances, has been conducted for years as including the transmission of electric current for all lawful purposes; and, the ordinance being many years old and the business in the field of selling electric current for power must have become considerable, a pretty strong case of practical construction is presented.

The ambiguity is pretty clearly removed by language following the words of grant. That language provides that, in case of any "other corporation organized for the supplying of electricity for light or power" desiring to use respondent's poles, it shall be permitted to do so on specified terms and conditions. Such language points, quite unmistakably, to the preceding part of the ordinance as having been designed to afford respondent a franchise privilege broad enough to include the power feature.

The words of grant to respondent, in the light of all the circumstances, should be construed to include the ordinary heat and power features of such franchises, and, as respondent's counsel claim, the transmission of electric current for all lawful purposes. The words, "use all public grounds," and in effect, in the ordinary way, followed by the words, "for the transmission of electricity upon, over, through, under and in the streets, lanes, alleys and public grounds," are as broad as the purposes for which electricity is commercially transmitted. What follows, conjunctively, are not words of limitation or explanation, but additional words of grant. "And to put in place and furnish lights for public and private lighting," refers solely to lighting characterized,

to some extent, by placing and caring for lamps in public territory. The city could not confer authority as to placing and furnishing lights for private purposes in private places, and, obviously, none was intended to be conferred. The purpose was to afford the ordinary power to use the street and public places in the ordinary way, for the transmission of electricity for commercial purposes, leaving all matters of use thereof upon private grounds for private purposes, to private treaty; but adding a clause respecting the location and operation of lamps so far as the public was in any wise concerned.

So the situation is this: The rights, in form, of the two parties under their respective public grants, referable to the ordinances and permit referred to, are substantially the same. The purpose of the action is to challenge the right of appellant, under the ordinance of June 7, 1909, to occupy any part of the field covered by respondent's permit, measured by the scope of the surrendered franchises. No other claim of right by appellant is referred to in the complaint or involved in the action. If it possesses, as against respondent, any right under such ordinance, to that extent it must prevail. If it does not, it cannot, regardless of whatever rights it may have otherwise.

It is claimed, on behalf of appellant, that it has, by force of sec. 1780b, Stats. (1898), a franchise directly from the state, since such section provides that, "Any corporation organized under general or special law for the purpose of furnishing heat, light, power or signals by electricity may, with the consent of and in the manner agreed upon with the authorities of any city or village, use any street, alley, lane, park, or public ground, for" such purposes upon specified conditions. That is quite an old statute. It does not cut any figure in this case if ch. 499, Laws of 1907, as amended by ch. 180, Laws of 1909, relating to the granting of indeterminate permits in consideration of surrender of existing licenses, per-

mits, or franchises, and the rights of the parties and powers of a city where such an indeterminate permit exists,—is valid, and respondent was in full occupancy of the field in controversy before it was attempted to confer rights on appellant by the ordinance of June 7, 1909. What effect such section might have under other conditions is beside this case.

There is no question but what respondent, May 28, 1909, complied with the law of 1907, as amended by that of 1909, and thereby became entitled to all the benefit thereof as to disability of the city of Kenosha to interfere with its monopoly. The logic by which effect is claimed for the ordinance of June 7, 1909, antedating May 28th of that year, does not appeal to us with sufficient persuasion to call for extended discussion. The ordinance necessarily took effect, so far as it took effect at all, according to the provisions of the city charter, not by contract. There is no provision in the charter whereby retroactive effect could be given by contract to an ordinance. No attempt to do so is disclosed by the ordinance itself. Furthermore, we do not find it claimed in the answer that appellant has, under its ordinance, any rights antedating the passage thereof. Such claim as appellant makes of right to otherwise use the streets for the purposes in controversy, is not material because not a defense to an action having for its sole purpose that of ousting it from the alleged void franchise of June 7, 1909.

The public utility law, in form, in unmistakable terms disabled the city of Kenosha from making such a grant as that in question after respondent's indeterminate permit took effect. It provides that:

"No license, permit or franchise shall be granted to any person, copartnership or corporation to own, operate, manage or control any plant or equipment for the production, transmission, delivery or furnishing of heat, light, water or power in any municipality where there is in operation under an indeterminate permit as provided in this act a public utility en-

State ex rel. Kenosha G. & E. Co. v. Kenosha E. R. Co. 145 Wis. 337.

gaged in similar service without first securing from the commission a declaration after a public hearing of all parties interested, that public convenience and necessity require such second public utility." [Sec. 1797m—74, Stats.: Laws of 1907, ch. 499.]

That is plain. The purpose of it is obvious. The intent was to give the holder of an indeterminate permit, within the scope thereof, a monopoly, so long as the convenience and necessities of the public should be reasonably satisfied, yet to secure to the public the benefit of the monopoly in excess of a fair return upon the investment, under proper administration, by insuring to the consumers the best practicable service at the lowest practicable cost, and to that end prohibit, conditionally, the granting of just such franchises as the one challenged in this case in the circumstances under which the ordinance of June 7, 1909, was passed.

Counsel for appellant reply to the last foregoing by contending that the provision of the public utility law creating a municipal disability to grant such a franchise as that attempted to be conferred on appellant, without the applicant therefor first obtaining a certificate of convenience and necessity as required, is unconstitutional; that the feature requiring the railroad commission to pass on the question of convenience and necessity, was an attempt to grant to it legislative powers.

True, the legislature cannot empower the railroad commission to exercise legislative or judicial power; but it may clothe it with authority to administer a law requiring the ascertainment of facts in order to determine whether the law applies, and if so, how, to situations as they arise. The administrative power includes, necessarily, power to determine the facts necessary to application of the law. That is a familiar principle governing numerous instances of grant of *quasi*-judicial and *quasi*-legislative power. They do not fall

within the field of that strictly judicial or legislative power which is undelegable.

It was said in *State ex rel. Minneapolis, St. P. & S. S. M. R. Co. v. R. R. Comm.* 137 Wis. 80, 117 N. W. 846, with reference to the scope of another feature of the public utility law of the nature of that in question:

"The seat of original power is the legislature. It cannot legitimately delegate it. It can properly clothe a commission with capacity to determine whether corporate rights created by the legislature are exercisable, that depending upon the existence of facts satisfying legal conditions precedent in that regard, and give to the corporation invoking its jurisdiction evidence of its determination."

There is the spirit of the doctrine within which the legislation in question is located.

Here the legislature provided, in effect, that in case of there existing under an indeterminate permit, a right of a corporation to enjoy such privileges as are involved in this case, no other permit or franchise shall be granted to any one to invade, in whole or in part, the same field, except upon a specified condition involving the ascertainment of a fact. That plainly created, conditionally, municipal disability, and to that extent amended all conflicting existing laws. It was the mere ascertainment of the fact that was delegated to the commission. The prohibition of the exercise of power, waiting upon such ascertainment, was of legislative creation. The mere administrative labor of ascertaining the fact, is not legislative power at all in the undelegable sense. Such administrative feature does not involve any element of expediency or legislative discretion, but only the judgment and discretion which any person or body commonly exercises to ascertain whether a given situation satisfies the calls of a rule prescribed by higher authority to a lower for guidance and enforcement. *State ex rel. Adams v. Burdge,* 95 Wis. 390

402, 70 N. W. 347; *State ex rel. Milwaukee Med. Coll. v. Chittenden,* 127 Wis. 468, 107 N. W. 500; *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797.

There is no other question which needs attention. The logic of our reasoning is that the order appealed from is right and must be affirmed.

*By the Court.*—So ordered.

BARNES, J. (*dissenting*). I base my dissent upon the following propositions, which I state without argument to support them:

1. Sec. 1780b, Stats. (1898), conferred a franchise directly from the state to the defendant, granting to it the right to use the streets of the city to erect poles therein and string wires thereon subject to the consent of the city to such use and occupation of its streets. *Oconto City W. S. Co. v. Oconto,* 105 Wis. 76, 83, 80 N. W. 1113.

2. By making a contract with the defendant obligating it under a penalty of $25,000 to erect poles and string wires thereon and to have a complete lighting plant in operation in less than four months, the city by necessary implication gave its assent to the use of the streets for such purposes, else it would be impossible for the defendant to carry out its contract obligation with the city.

3. By virtue of sec. 1780b, Stats. (1898), and the contract made on April 17, 1909, the defendant secured an indeterminate permit under ch. 499, Laws of 1907 (secs. 1797m—1 to 1797m—108, Stats.), to place poles and wires in the streets to whatever extent was necessary to enable it to carry out its municipal lighting contract.

4. Sec. 1780b, Stats. (1898), was not repealed by sec. 959—49, Stats. (1898), nor by sec. 940b, Stats. (1898), nor by ch. 165, Laws of 1907 (sec. 1778, Stats.), nor by ch. 499, Laws of 1907 (secs. 1797m—1 to 1797m—108). There is no pretense that any of the statutes referred to ex-

pressly repeal sec. 1780b. The question of repeal by impli-
cation is treated in *State ex rel. Milwaukee v. Milwaukee E.
R. & L. Co.* 144 Wis. 386, 129 N. W. 623, and it is apparent
under the decisions therein referred to that there was no re-
peal of sec. 1780b by implication.

5. The relator, having surrendered the franchise under
which it was operating after the appellant made its contract
with the city and before the ordinance of June 7th was
passed, received an indeterminate permit to engage in a com-
mercial lighting business, but did not secure any such permit
to engage in the business of furnishing lights to the city; so
that when the ordinance was passed the relator could lawfully
engage in the one species of the lighting business and the ap-
pellant in the other.

6. The ordinance of June 7th regulated in detail the con-
ditions under which the streets were to be used by the appel-
lant, the manner of replacing them when torn up, the size of
the post holes, the height of the poles, the matter of changing
them from one location to another as occasion might require.
Omitting the words "and private" from one sentence in the
ordinance, every part and parcel of it was a proper and neces-
sary enactment to define the rights and fix the liabilities of
the appellant under its contract, and one which the city had
the right to pass and the relator had the right to accept.

7. The fact that the appellant had no franchise coupled
with municipal consent which entitled it to maintain poles or
string wires for the purpose of doing a commercial lighting
business, did not render the remaining portion of the ordi-
nance void.

8. The appellant justified its right to insist on the validity
of the ordinance because of the indeterminate permit which it
held. Its answer set up a perfect defense to the cause of
action set forth in the complaint, except in so far as its right
to engage in a commercial lighting business was attacked.
The answer therefore set up a good defense in part to the

relator's cause of action, and a demurrer thereto should not be sustained and the entire ordinance in effect be declared inoperative, and this without the city being made a party or being given an opportunity to be heard.

9. By the ordinance of June 7th a franchise was conferred on the appellant to erect poles and string wires for furnishing "power and heat." The relator had no right under its franchise to furnish electricity for the purpose of furnishing power or heat, and, when it surrendered its franchise, of course took under its indeterminate permit only such powers as it had under the franchise surrendered. The city had a perfect right to grant the franchise to whomsoever it chose to erect poles and string wires to convey electricity for the purpose of conveying heat and power, and for this reason if for no other the answer states a good defense in part to the relator's cause of action.

10. The appellant is called upon by the relator to show by what warrant it assumes the right to erect poles and string wires thereon in the public streets. It answers by saying in part that it does so by virtue of a valid franchise empowering it to use the streets in so far as may be necessary to light them and to convey electricity for heat and power purposes. In my judgment this answer is true. I am unable to see why it does not state a good defense in whole or in part to the cause of action set forth in the petition.

WINSLOW, C. J., and SIEBECKER, J., concur in the views of Mr. Justice BARNES.

A motion for a rehearing was denied March 14, 1911.