JONES, Administratrix, Respondent, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*November 14—December 5, 1911.*

*Interurban railways: Negligence: Death of employee: Contributory negligence: Assumption of risk: Negligence of fellow-servants: "Railroad company:" Statutes: Construction: Trial: Questions for jury: Special verdict: Inconsistency: New trial: Appeal: Orders: Questions reviewed: Directing judgment.*

1. In an action for death of a conductor on an interurban car, caused by his being crushed between the wall of defendant's station and the rear end of the car as it was taking a curve at the exit from the station, the jury found in answer to one question that deceased, at and prior to the time of his injury, knew of the dangers incident to his employment by reason of defendant's failure to furnish a safe place in which to perform his duties, and then answered in the negative the question "Did the failure of the deceased to exercise ordinary care in any degree proximately contribute to his injury?" In connection with the latter question the court had charged the jury that, if deceased knew of the danger, he had assumed the risk of the employment and they should answer the question in the affirmative. No contributory negligence other than assumption of the risk was shown. *Held*, that the answers to the two questions were inconsistent and the court properly set aside the verdict on that ground.

2. Undisputed evidence that the deceased had held the position of conductor for more than a year and had had ample opportunity

to familiarize himself with the situation and the movement of cars on the curve, and that about two weeks before his death he related the particulars of a narrow escape he had had from a similar injury at the same place, sufficiently established the fact that he knew of and assumed the risk.

3. One who assumes the risk incident to working in an unsafe place assumes also the risk that a negligent act of a fellow-servant (not performing a duty which the law casts upon the master) may, in conjunction with the peril of the place, cause an injury.

4. An electric interurban railway company is not a "railroad company" within the meaning of sec. 1816, Stats. (1898), as amended by ch. 254, Laws of 1907.

5. Where a statute is drastic and its burdens heavy it should not be extended by construction to subjects or persons not named therein.

6. Where defendant moved for judgment upon the special verdict, or upon the undisputed evidence notwithstanding the verdict, or to change the verdict and for judgment thereon as changed, and plaintiff moved for judgment on the verdict, or for a new trial, but not upon the ground of inconsistency in the verdict, and the court by order granted plaintiff's motion for a new trial upon the sole ground that the answers of the special verdict were inconsistent, an appeal by defendant from such order carried with it the right of review of that part of the order which denied defendant's motion for judgment by granting a new trial instead.

7. Where in such a case the inconsistency in the verdict is caused by an answer which has no support in the evidence and without which defendant would be entitled to judgment on the verdict, and there is no offer to supply additional evidence on a new trial and no probability appears of the defect being cured upon such trial, the order should be reversed and the cause remanded with the direction to enter judgment for the defendant.

APPEAL from an order of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Reversed.*

The order appealed from granted a new trial.

For the appellant there were briefs by *Van Dyke, Rosecrantz, Shaw & Van Dyke,* and oral argument by *James D. Shaw.* To the point that sec. 1816, Stats. (Laws of 1907, ch. 254), is not applicable to defendant, they cited *McKiver-*

Jones v. Milwaukee E. R. & L. Co. 147 Wis. 427.

*gan v. Alexander & E. L. Co.* 124 Wis. 60, 102 N. W. 332;
*Gould v. Merrill R. & L. Co.* 139 Wis. 433, 445, 121 N. W.
161; *Milwaukee L., H. & T. Co. v. M. N. R. Co.* 132 Wis.
313, 112 N. W. 663; *Chicago & N. W. R. Co. v. O., A. &
B. W. R. Co.* 107 Wis. 192, 83 N. W. 294; *Murray Hill L.
Co. v. Milwaukee L., H. & T. Co.* 110 Wis. 555, 567, 86 N.
W. 199; *Funk v. St. Paul City R. Co.* 61 Minn. 435, 63 N.
W. 1099, 29 L. R. A. 208; *State v. Duluth G. & W. Co.* 76
Minn. 96, 78 N. W. 1032; *Lundquist v. Duluth St. R. Co.*
65 Minn. 387, 67 N. W. 1006; *Fallon v. West End St. R.
Co.* 171 Mass. 249, 50 N. E. 536; *Scott v. Farmers' & M.
Nat. Bank,* 97 Tex. 31, 75 S. W. 7, 16; *Riley v. Galveston
City R. Co.* 13 Tex. Civ. App. 247, 35 S. W. 826; *Manhat-
tan T. Co. v. Sioux City C. R. Co.* 68 Fed. 82; *Louisville &
P. R. Co. v. Louisville City R. Co.* 2 Duv. (Ky.) 175; *Frei-
day v. Sioux City R. T. Co.* 92 Iowa, 191, 60 N. W. 656;
*Fidelity L. & T. Co. v. Douglas,* 104 Iowa, 532, 73 N. W.
1039; *Sams v. St. L. & M. R. R. Co.* 174 Mo. 53, 73 S. W.
686, 61 L. R. A. 475; *Massillon B. Co. v. Cambria I. Co.* 59
Ohio St. 179, 52 N. E. 192; *Gyger v. Philadelphia City P.
R. Co. (Appeal of Montgomery)* 136 Pa. St. 96, 20 Atl. 399.

For the respondent there was a brief by *Perry, Morton &
Kroesing,* and oral argument by *George E. Morton.* On the
question of defendant's negligence they cited *Sparks v. Wis.
Cent. R. Co.* 139 Wis. 108, 120 N. W. 858; *Winkler v.
Power & M. M. Co.* 141 Wis. 244, 124 N. W. 273; *Boyce v.
Wilbur L. Co.* 119 Wis. 642, 97 N. W. 563; *Renne v. U. S.
L. Co.* 107 Wis. 305, 83 N. W. 473; *Johnson v. St. Paul &
W. C. Co.* 126 Wis. 492, 105 N. W. 1048; *Ferren v. Old
Colony R. Co.* 143 Mass. 197, 9 N. E. 608; Wood, Master &
Servant, 794, § 403. On the questions of assumption of risk
and contributory negligence: *Citizens' St. R. Co. v. Reed,* 28
Ind. App. 629, 63 N. E. 770; *Narramore v. C., C., C. & St. L.
R. Co.* 96 Fed. 298; *Powell v. Ashland I. & S. Co.* 98 Wis. 35,
73 N. W. 573; *Campshure v. Standard Mfg. Co.* 137 Wis. 155,

118 N. W. 633; *Clary v. C., M. & St. P. R. Co.* 141 Wis. 411, 123 N. W. 649. To the point that defendant was a "railroad company" and therefore, under sec. 1816, Stats. (Laws of 1907, ch. 254), assumption of risk was no defense, they cited, among other cases, *Quackenbush v. Wis. & Minn. R. Co.* 62 Wis. 411, 22 N. W. 519; *Holum v. C., M. & St. P. R. Co.* 80 Wis. 299, 50 N. W. 99; *Schlemmer v. B., R. & P. R. Co.* 205 U. S. 1, 27 Sup. Ct. 407; *Milwaukee L., H. & T. Co. v. M. N. R. Co.* 132 Wis. 313, 112 N. W. 663; *Dinsmore v. R. & M. R. Co.* 12 Wis. 649; *Chicago & N. W. R. Co. v. Milwaukee, R. & K. E. R. Co.* 95 Wis. 561, 70 N. W. 678; *Pierce v. Chicago & M. E. R. Co.* 137 Wis. 550, 119 N. W. 297; *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 119 N. W. 309, 120 N. W. 756; *Chicago, M. & St. P. R. Co. v. Voelker,* 129 Fed. 522; *Blodgett v. Milwaukee E. R. & L. Co.* 141 Wis. 329, 124 N. W. 246; *Gibson v. Milwaukee L., H. & T. Co.* 144 Wis. 140, 128 N. W. 877.

TIMLIN, J. George A. Jones, a conductor in the employment of the interurban service of the defendant, was killed on May 8, 1908, by being crushed between the wall of defendant's building and the handhold for the rear entrance to one of its cars. In this action by his administratrix, grounded on negligence causing his death, there was a special verdict. The verdict found that the car was suddenly and negligently started by the motorman without giving the usual signal and that this was a proximate cause of the injury. It further found that the defendant failed to furnish to the decedent a reasonably safe place in which to work and that such failure was a proximate cause of the injury. In and by the answer to the ninth question submitted it was found that the deceased, at and prior to the time of his injury, knew of the dangers incident to his employment by reason of the failure to furnish a safe place in which to perform his duties. In answer to the tenth question the jury found that the failure

of the deceased to exercise ordinary care did not in any degree proximately contribute to his injury, and in answer to the eleventh question found that the deceased was not guilty of any negligence which directly contributed to his injury. The court instructed the jury as follows:

"The tenth question: Did the failure of the deceased to exercise ordinary care in any degree proximately contribute to his injury? It is contended that the deceased assumed the risk of an accident such as occurred which caused his injury. He assumed those risks and dangers which he knew or which a person of reasonable care and prudence, under like circumstances, ought, in the exercise of ordinary care, to have known and appreciated. Therefore, if under the rule which I have just stated you are satisfied that the plaintiff assumed the risk of the accident which caused the injury to him, that is, that he knew or ought, in the exercise of ordinary care, to have known of the risk incident to the performance of his duties, then he may be said to have assumed the risk of the employment and you should so answer in your verdict, otherwise you should answer that question in the negative."

The circuit court set aside the verdict because of inconsistency in the foregoing answers and granted a new trial. It may be observed that in the answer to the ninth question the jury affirmatively found the fact to exist upon which assumption of risk is commonly predicated. By the instruction above quoted the circuit court made the tenth question submitted cover this same ground. In a proper case this enlargement by instruction of the scope of a question is permissible. *Campshure v. Standard Mfg. Co.* 137 Wis. 155, 118 N. W. 633, and cases cited. But contributory negligence and assumption of risk are affirmative defenses. The burden of proof is on the defendant (*Nadau v. White River L. Co.* 76 Wis. 120, 43 N. W. 1135), and in this case there was no contributory negligence, as contradistinguished from assumption of risk, shown. The answers of the jury to the ninth and tenth questions were consequently inconsistent and

the verdict properly set aside on this ground. The jury in effect found assumption of risk and no assumption of risk.

But the appellant contends also that the evidence was in any event insufficient to establish its liability, hence that its motion to direct a verdict in its favor, which was denied by the order granting a new trial, should have been granted. The motorman, it is argued, was a fellow-servant of the deceased conductor, and no liability of the defendant was established by the finding of the motorman's negligence and its proximate relation to the injury. On the remaining ground of liability, namely, the unsafe condition by reason of the nearness of the tracks to the wall of the building and the curve in the track, causing the rear end of the car to swing over toward the wall when the car started, it is argued that the undisputed evidence shows that this condition was obvious and known to the deceased, consequently the risk was assumed. This involves an examination of the evidence.

In a building called the Public Service Building, owned and managed by defendant, and on the ground floor thereof level with the street, are a number of railway tracks. The most northerly of these tracks runs parallel with and near to the inside of the north wall of the building for some distance. When a car is on the parallel part of this track the overhang of the car brings the north side of the car within about one and one-half feet from the wall. The cars on this track face toward and move out of the west exit. At a point in the track about twenty feet east of the west exit the track curves to the south, and progressively from the center of this curve, which is about the west exit, by reverse curve to the north. When the front trucks of a long car take the curve to the south the rear end of that car is thereby swung northward so as to approach closer to the north wall of the building, and at one point where there is a buttress projection in the wall swings to within a few inches of the wall, and continues until the forward trucks take the reverse or northerly curve, when

the rear end of the car bears away from the wall. The train in question consisted of a forward car and trailer. It usually started from inside of the building on this north track, although the forward car frequently and on the occasion in question protruded somewhat west of the west exit of the building. The deceased was conductor on the rear car or trailer and held that position for more than a year prior to his death, and had ample opportunity to thoroughly familiarize himself with the proximity of the north track to the north wall of the building, the curves above described, and the manner in which the rear of the trailer swung over toward the wall when the forward trucks thereof took the south curve. The conductor on the motor or forward car testified that in a conversation with the deceased about two weeks prior to his death deceased stated that he narrowly escaped that morning. Deceased said:

"I thought I heard a noise behind the rear end of the trailer. I looked out there, went around the side of the trailer to see what the trouble was, and just as quick as I got there I noticed the car going toward the wall, and I got my head in just in the nick of time or I would have been squashed between the trailer car and the wall."

The witness Rux testified somewhat to the same effect. This evidence supports the claim of defendant's counsel that deceased knew of and assumed the risk within the rule of the following cases: *Sweet v. Ohio C. Co.* 78 Wis. 127, 47 N. W. 182; *Paule v. Florence M. Co.* 80 Wis. 350, 50 N. W. 189; *Burnell v. West Side R. Co.* 87 Wis. 387, 58 N. W. 772; *Erdman v. Ill. S. Co.* 95 Wis. 6, 69 N. W. 993; *Hennesey v. C. & N. W. R. Co.* 99 Wis. 109, 74 N. W. 554; *Yerkes v. N. P. R. Co.* 112 Wis. 184, 88 N. W. 33; *Corrigan v. West Div. S. Co.* 133 Wis. 77, 113 N. W. 441; *Murphy v. Herold Co.* 137 Wis. 609, 119 N. W. 294; *Haring v. G. N. R. Co.* 137 Wis. 367, 119 N. W. 325. The plaintiff's counsel makes two answers to this contention: (1) That assumption

of risk, so far as it is applicable to an unsafe place, only includes those risks which arise from the proper and not those which arise from the negligent operations of a fellow-servant, even where the fellow-servant is not performing a duty which the law casts on the master. Hence that if deceased, by actual knowledge of a defect or ample opportunity to know of an obvious danger, assumed the risk arising therefrom, he did not assume the risk arising from the negligent act of a fellow-servant acting jointly with the known unsafe place to produce the injury. But the rule which absolves the master from liability where the injury is caused by the negligent act of a fellow-servant of the injured is based on the theory that each servant assumes all risk of negligent injury by a competent fellow-servant. So the logic of this position would lead to the conclusion that where an employee was injured by the action of one assumed risk he could not recover, but if injured by the concurrent action of two assumed risks he could recover. This is like adding two nothings to make something. (2) That the words "railroad company" in ch. 254, Laws of 1907, amending sec. 1816, Stats. (1898), were intended to include electric interurban railways, and hence that the defense of assumption of risk and that of the fellow-servant's negligence are not available to defendant. The phrase "railroad company" is defined in this act "to embrace any company," etc., "managing, maintaining, operating or in possession of a railroad." In one sense an electric interurban road is a railroad. The cars run on rails. But we think it is not a railroad within the meaning of this act. The amendatory act purports to amend sec. 1816, Stats. (1898), and this section is found in the chapter relating to the ordinary steam-driven commercial railroad which is operated by a corporation organized under a statute different from that under which defendant is organized and which imposes different duties and grants different powers. Again, many of the provisions of the chapter on railroads in which

occurs sec. 1816 are entirely inapplicable to electric interurban roads. In various acts of the legislature, such as chs. 282, 580, and 582, Laws of 1907; ch. 475, Laws of 1909; and ch. 366, Laws of 1911, by specially naming electric interurban railways instead of attempting to cover them by general laws relating to railroads, the legislature has to some extent indicated its understanding that something more definite than the general term "railroads" or "railroad companies" was requisite to identify as the object of the legislation these electric interurbans. Next, the history of the statute, sec. 1816, Stats. (1898), and the popular use of the word "railroad" as indicating something other than an electric interurban railway, and what we conceive to be the general understanding of the legal profession, and the expressions of this court in *McKivergan v. Alexander & E. L. Co.* 124 Wis. 60, 102 N. W. 332; *Gould v. Merrill R. & L. Co.* 139 Wis. 433, 121 N. W. 161; *State ex rel. Vilter Mfg. Co. v. M., B. & L. G. R. Co.* 116 Wis. 142, 92 N. W. 546, and other cases, all tend to negative this construction. It would be quite a stretch of construction for this court to hold that the heavy burdens of sec. 1816 were intended by the legislature to be imposed on electric interurban railways under the term "railroads," when the legislature could use and is accustomed to use the more specific description in legislation concerning the interurbans. Where a statute is drastic and its burdens heavy it is not permissible to bring within its terms by latitudinarian construction those not named therein. This merely recognizes the intention which ordinarily accompanies any such command, and this principle lies at the basis of what is called strict construction. The effect of assumption of risk by the employee of an interurban railway company is not changed by this statute.

There remains only the question whether, upon appeal from an order granting a new trial on the ground that the findings in a special verdict are inconsistent, this court can

review any other ruling, such as that denying defendant's motion for judgment heard and decided with and by the order granting a new trial.

Upon appeal by plaintiff from an order denying a motion for judgment on a special verdict the court cannot, at the instance of defendant and to support the ruling, review the evidence to see if the verdict is supported. *Wheeler v. Pereles,* 43 Wis. 332. On plaintiff's appeal from an order granting a new trial and on his separate appeal from an order denying him judgment on a special verdict the court cannot, in order to support such order, review another order holding that the complaint stated a cause of action and overruling a demurrer thereunto. *Flanagan v. C. & N. W. R. Co.* 45 Wis. 98. Upon appeal by defendant from an order refusing to vacate a judgment against him he cannot have a review of an order denying his application for a continuance on similar grounds. *Breed v. Ketchum,* 51 Wis. 164, 7 N. W. 550. Upon appeal from an order of the circuit court appointing a trustee of an express trust in an action, this court will not consider any of the questions involved in an action to set aside the trust deed. *Reigart v. Ross,* 63 Wis. 449, 23 N. W. 878. On appeal from an order refusing to vacate a temporary injunction this court cannot review an order substituting a new plaintiff in the same action. *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493, 83 N. W. 851. Evidence offered for the party in whose favor the verdict is rendered, although improperly rejected, cannot be considered on appeal from an order granting a new trial on motion of the other party. *Jones v. C. & N. W. R. Co.* 49 Wis. 352, 5 N. W. 854. An appeal from an order of reassessment in an action to set aside tax certificates cannot bring up for review the ruling of the court below holding part of the taxes invalid. *Spear v. Door Co.* 65 Wis. 298, 27 N. W. 60; *Webster-Glover L. & Mfg. Co. v. St. Croix Co.* 63 Wis. 647, 24 N. W. 417. "Only matters involved in the issues closed by

the determination appealed from" are reviewed. *State ex rel. Kenosha G. & E. Co. v. Kenosha E. R. Co.* 145 Wis. 337, 129 N. W. 600. The general rule in the federal court of appeals and in many other courts of review is that an order granting a new trial cannot be reviewed on writ of error, because the granting or refusal of a new trial rests in the sound discretion of the trial court and because such an order is not a final order or judgment. *Clement v. Wilson,* 135 Fed. 749, and cases. But our statute expressly gives an appeal from an order granting or refusing a new trial. Sec. 3069, Stats. (1898). We have also a statute expressly providing that upon appeals from a judgment as well as upon a writ of error to a judgment the supreme court may review any intermediate order or determination of the court below which involves the merits and necessarily affects the judgment. Sec. 3070, Stats. (1898). No such provision exists with reference to appeals from orders.

The defendant moved upon the records, files, and proceedings in the action and upon the special verdict for judgment. on the verdict, also for judgment upon the uncontradicted evidence notwithstanding the verdict, and in the event that both of the foregoing motions were denied, but not otherwise, for an order changing the answers to the several questions of the special verdict to conform to the evidence, and for judgment in its favor on the special verdict so changed and amended, but did not move for a new trial. The plaintiff moved for judgment on the verdict and in the alternative for a new trial, but not on the ground of inconsistency in the answers; but the order thereon states that the motion is granted solely upon the ground that the answers of the jury to questions 9, 10, and 11 of the special verdict are inconsistent and that all other motions of plaintiff and defendant above set forth be denied. The appeal from such an order authorized by the statute seems to carry with it the right of review of that part of such order which denies the defend-

ant's motion for judgment by granting a new trial instead. Cases may occur in which this rule would work a hardship on the party in whose favor a new trial is granted, by cutting him off from supplying on the new trial evidence inadvertently omitted. But this must be guarded against by the form of motion made by the party moving for a new trial or by the form of the ruling made by the circuit court, or will be protected, in case there is shown a probability of supplying the omitted evidence, by this court in its discretion. In the instant case there is insufficient evidence to fasten liability upon the defendant. There is no offer to supply other or additional testimony on a new trial, and there is no probability that the defects found to exist can be cured upon another trial. The answers of the jury are inconsistent, but the inconsistency is occasioned by an answer which has no support in evidence. Therefore the order appealed from must be reversed and the cause remanded with directions to grant defendant's motion for judgment.

*By the Court.*—Judgment reversed, and the cause remanded with directions to enter judgment for the defendant.