VEERHUSEN VS. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

| 53 | 689 |
|----|-----|
| 74 | 472 |

*November 30, 1881 — January 10, 1882.*

RAILROADS: CATTLE ON TRACK: EVIDENCE. *(1) To whom company liable for injury to cattle. (2, 3) Sufficient protection as substitute for fence: Evidence. (4) Error in rejecting evidence cured.*
NEGLIGENCE. , *(5) Court and jury.* ·

1. Railway companies are at least liable to *occupants* as well as to *owners* of adjoining lands, whose cattle are injured upon railway tracks in consequence of the neglect of the companies to fence. Section 1810, R. S. [And it *would seem* that they are liable to *all persons* whose cattle are injured through such neglect. *Laude v. C. & N. W. R'y Co.,* 33: Wis., 640.]
2. The mere *opinion* of a witness upon the question whether a certain bank of earth between defendant's track and land occupied by the plaintiff was "as good a protection against cattle as a fence four and a half feet, high," is inadmissible.
3. Section 1810, R. S., provides that no fence shall be required in places·: "where the proximity of ponds, . . . hills, embankments or other · *sufficient* protection renders a fence unnecessary to protect cattle from·. · straying" upon a railroad track. *Held,* that the fact that cattle have in fact, in a given instance, surmounted an embankment and gotten upon the track, is conclusive that such embankment was not a "sufficient · · protection."
4. An error in ruling out testimony is cured where the witness afterwards testifies fully upon the subject.
5. There was no error in submitting the question of plaintiff's contributory negligence to the jury upon all the evidence, and refusing to instruct them that facts contained in certain hypothetical statements prepared by defendant's counsel and supposed to conform to the proofs, would show such contributory negligence.

VOL. LIII — 44

APPEAL from the Circuit Court for *Dane* County.

Action for injuries received by plaintiff's cattle while stray-ing upon defendant's track, and alleged to have been caused by defendant's neglect to erect fences and keep the same in repair between the plaintiff's land and said track. The facts established by the evidence as understood by this court, and the exceptions taken to the rulings of the court below, will sufficiently appear from the opinion.

There was a verdict for the plaintiff; a new trial was refused; and defendant appealed from a judgment on the verdict.[1]

[1] The R. S. of 1878 contained the following provisions: "Sec. 1810. Every railroad corporation operating any railroad shall erect and maintain on both sides of any portion of its road   .   .   .   good and sufficient fences of the height of four and a half feet, with openings or gates or bars therein, and suitable and convenient farm crossings of the road for the use of the occupants of the lands adjoining, and shall construct and maintain cattle guards at all highway crossings, and connect their fences therewith, to prevent cattle and other animals from going on such railroad.   .   .   .   Until such fences and cattle guards shall be duly made, every railroad corporation owning or oper-ating any such road shall be liable for all damages done to cattle, horses or other domestic animals, or persons thereon, occasioned in any manner, in whole or in part, by the want of such fences or cattle guards. But after such fences and cattle guards shall have been in good faith constructed, such lia-bility shall not extend to damages occasioned in part by contributory negli-gence, nor to defects existing without negligence on the part of the corporation or its agents. A barbed wire fence, consisting of two barbed wires, with at least forty barbs to the rod, and one smooth wire, firmly fastened to posts not more than two rods apart, with one good stay between, the top wire not over fifty-two nor under forty-eight inches high, and the bottom wire not less than sixteen inches from the ground, or a wire fence consisting of four smooth wires set in the same manner, except that the stays between posts shall not be more than eight feet apart, shall be deemed a sufficient fence; and no fence shall be required in places where the proximity of ponds, lakes, water courses, ditches, hills, embankments, or other sufficient protection, renders a fence unnecessary to protect cattle from straying upon the right of way or track." Sec. 1812 provides that the owner or occupant of land adjoining a railroad may give a certain notice to the company to build a fence on his land as re-quired by law, and, in case of its neglect to do so within a certain time, empowers such owner or occupant to build such fence and recover the cost thereof from the company. Sec. 1813 provides that the occupant of inclosed

*F. J. Lamb*, for the appellant, argued, *inter alia:* 1. The opinion of the witness Woodard as to the sufficiency of the bank was competent. The bank had once been sufficient as a fence, and the question was whether at the time in question it was sufficient, or, if insufficient, whether, from an inspection of it, defendant's servants, exercising ordinary prudence and care, ought to have known that it was insufficient. The proper inquiry for the jury was, whether, in the judgment of persons of ordinary prudence and discretion and experience in such matters, judging before the accident happened, the bank was a sufficient protection. The question ought not to be determined by the result of the accident. That would make the railway company an insurer of the sufficiency of the fence or its equivalent. Reasonable diligence and care in maintaining such fence is all that the law requires. *Murray v. N. Y. Central Railroad Co.*, 3 Abb. Ct. App. Dec., 343. 2. It was error to exclude the testimony offered to show that plaintiff's cattle were in the pit-hole wrongfully at the time complained of. Unless Woodard had sold, or by agreement given, the pasturage or the right to use the pit-hole to the plaintiff, the cattle were there unlawfully, and plaintiff had no right to require the defendant to maintain a fence to keep them from its track. Cooley on Torts, 659, 660; *McCandless v. Railway Co.*, 45 Wis., 370; R. S., secs. 1810, 1812, 1813. The statutes imposing upon railway companies the duty of building and maintaining fences, impose that duty "for the use" of owners and occupants of adjoining lands. By all rules of statutory construction, the duty thus prescribed is owing to the classes named, and to them alone. *Expressio unius est exclusio alterius. Conroe v: Bull,* 7 Wis.,408; *State ex rel. Crawford v. Hastings,* 10 Wis., 525; *McDonnell v. Railroad Corp.,*

lands through which a railroad runs, may give the railroad company notice to construct fences, farm-crossings and cattle guards thereon, and provides for his recovering certain sums in the nature of a penalty in case the company neglects to do so.

115 Mass., 564; *Giles v. Railroad*, 55 N. H., 552. The word occupant is used as synonymous with owner, or as describing one in possession claiming to be owner or tenant, or agent or representative of the owner. It does not include one casually on the premises without right or authority.

For the respondent there was a brief by *Welch & Botkin*, and oral argument by *Mr. Botkin*.

ORTON, J. The evidence sufficiently established, and the jury may be presumed to have found, the following facts: (1) When the railway was constructed, a burrow or pit-hole was made by an excavation into the lands of one Woodard, near the track. (2) The railroad was not fenced at that point, because it was at that time supposed that the steep bank of the pit-hole would be sufficient protection against animals going upon the track from such pit-hole. (3) In the course of time this bank or acclivity became more sloping by caving off and being washed down, from natural causes, and, with the knowledge of the company, ceased to be such protection against animals going over it and upon the railroad adjoining; and in the summer of 1879, before the accident occurred, the company attempted to repair it with ties and brush, but, as it appears, insufficiently. (4) The pit-hole is situated in a small corner of Woodard's land, cut off from the main body of his lands by the railroad, and was within the enclosure of the land of the plaintiff and used by him as a pasture, where the cattle killed were being pastured at the time. (5) On the other side of the railroad, and near by, a small corner of the plaintiff's land was cut off from the main body of his lands by the road, and was within the enclosure of the lands of Woodard. (6) These corners, so situated, were used and occupied by Woodard and the plaintiff, respectively, with the lands with which they were so enclosed, and had been so used and occupied for over six years by mutual consent. (7) The plaintiff's cattle went upon the railroad over this bank, and were killed.

1. Upon these facts it is insisted by the learned counsel of the appellant, that the company owed no duty and incurred no liability to the plaintiff, because he was not the owner of the land adjoining the railroad, from which his cattle passed upon the road; and the statute is cited as showing that such duty and liability are limited and restricted to the owner of adjoining lands, and are not common to all persons whose animals pass over an insufficient fence or embankment upon the road, whether they are the owners of the adjacent land from which they go upon the road or not. If the statute is appealed to as containing any such restriction or limitation, then the plaintiff has brought himself within it; for he was without question an *occupant* of the small corner of land from which his cattle passed upon the road, and the company is liable to the occupant as well as the owner of adjoining land, by the express words of the statute. Section 1810 uses the words "occupants of the lands adjoining," and the words "owner or occupant" are used in the following sections. The word "occupant," as here used, has the same meaning as when used in other statutes, such as relate to taxation, partition, fences, highways, etc., and as in common parlance, and means one in actual possession. 2 Abb. L. Dic., tit. "Occupy; " *Smith v. Sanger*, 3 Barb., 360, and cases cited. The case seems to have been tried upon the theory of such restricted liability, and the court instructed the jury that, to find for the plaintiff, they must find " that his cattle went upon the railroad track from the pit and up the embankment in question, from the pasture *owned or occupied by him*."

The plaintiff having proved that he was at least the rightful occupant of the land from which his cattle went upon the track of the railroad, and having thus fulfilled the requirement of the statute according to the construction claimed for it, it is unnecessary to determine in this case whether the statute does so restrict and limit the duty and liability of railroad companies in respect to fencing their roads. I am not

aware, however, of any decision of this court in respect to any statute upon this subject which has existed either in the charter of the companies or as a general law, to this effect. On the other hand, it has been repeatedly held that the statute was designed for the protection of the public generally, whose animals were liable to get upon the track of a railroad, and that the liability of a railroad company for damages to animals not belonging to the owner of adjoining lands, is as clear as its liability to the owner of such lands, if the owner of the animals killed or injured is free from contributory negligence. Such was the decision in *McCall v. Chamberlain*, 13 Wis., 637, in respect to section 15, ch. 122, Laws of 1856, relating to the La Crosse & Milwaukee Railroad Company; and in *Laude v. Chicago & N. W. Railway Co.*, 33 Wis., 640, in respect to sections 1 and 2, ch. 268, Laws of 1860, which are preserved as sections 30 and 31, ch. 119, Laws of 1872, and which provisions would seem to be still the law upon the subject; but this we do not decide.

2. The witness Woodard was asked: "In your opinion, was that bank, as it stood there at that time, as good a protection against cattle as a fence four and a half feet high — post and board fence?" An objection to this question was properly sustained. It asks for the mere opinion of the witness upon a matter concerning which, with the same knowledge of the facts, the opinion of any one else would have as much weight; and the jury should not be influenced by the opinion of any one who is not more competent to form one than themselves, and they should be left free to form their own opinion after hearing all of the evidence. To extend expert testimony so far would include almost anything which is the subject of common observation.

A comparison of this bank or acclivity, which is to answer all of the purposes of an actual fence, with a fence built where it is necessary to build one, in order to ascertain whether it is sufficient and a lawful protection against animals

going upon a railroad track, is very imperfect and quite insufficient; and the ordinary language to express the proper degree of care and prudence in keeping it in proper condition to answer such purpose, such as "reasonably sufficient to prevent cattle from passing up it," as found in the charge of the court, would seem to be inappropriate.

Cattle may jump over or break down the fence required to be built, and go upon the track, and yet the fence be a lawful one, or reasonably sufficient. Not so, however, with this bank. It must be in such condition that cattle cannot go over it, or it is no protection at all; for cattle cannot jump up it or over it, however unruly or unusually active they may be, and cannot break it or grade it down, so as to more easily scale it or walk over it. All cattle can go over it if any one of them can, and with the same facility; and if one can, it is no protection at all against any of them. It is not a wall or embankment, but it is an acclivity or hill, which must be so steep or so nearly perpendicular that cattle cannot scale it, or it will not be any protection whatever, and of course much less than a fence built where one is needed. The question, then, in order to be intelligible, must be, whether cattle can possibly go or walk over it, and any other question in relation to such a place would be impertinent and meaningless.

The fact proved, and found by the jury, that the cattle of the plaintiff did go over it, is conclusive that it afforded no protection against their doing so, and that it never was any such protection, or that it failed to be such by a change of its original condition. To adopt the language of the statute, this bank or hill is not "a sufficient protection [which] renders a fence unnecessary to protect cattle from straying upon the right of way or track," if cattle can go over it.

3. The witness Woodard was asked the following question: "Has *Mr. Veerhusen*, by your permission, occupied any part of your land as a pasture?" This question was improper, as calling for conclusions rather than facts, and because it is

evasive of the only material question in relation to the occupancy of the plaintiff, whether he occupied this particular corner of Woodard's land for any purpose.    Besides, the error, if any, in ruling out this question was cured by the witness being allowed afterwards to testify fully in respect to the matter of such occupancy, in answer to the question which was permitted to be asked, " State whether *Mr. Veerhusen* has occupied that land during any of this time with your knowledge? " and upon cross examination the witness testified: " He has had use of it; has used it for a pasture, in connection with his own land. . . . I have never objected to the occupation by *Mr. Veerhusen* of that piece of land.    I could not use it to very good advantage.    I let him pasture there without objection.    I let him use it for that purpose, and I have a little piece of his on the other corner that I have used with mine.    I don't suppose it is any more than a rod square."

4. The learned counsel of the appellant requested the court to instruct the jury that the facts contained in certain hypothetical statements, supposed to conform to the proofs in the case, would show contributory negligence on the part of plaintiff, and this was refused.    The court said: " I cannot so charge you, but leave it to you to say whether, from the whole situation and all of the circumstances, he was guilty of doing what men of ordinary caution and prudence would not ordinarily do in relation to his own, and pasturing his cattle and guarding against accident; " and this was also excepted to. We think the court very properly left the whole question of negligence to the jury.    *Spencer v. Milwaukee & P. du C. R. R. Co.*, 17 Wis., 487; *Kavanaugh v. City of Janesville*, 24 Wis., 618; *Houfe v. Town of Fulton*, 29 Wis., 296; *Sutton v. Town of Wauwatosa*, 29 Wis., 21; *Wheeler v. Town of Westport*, 30 Wis., 392; *Kelley v. Town of Fond du Lac*, 31 Wis., 179; *Ewen v. C. & N. W. Railway Co.*, 38 Wis., 613.

*By the Court.*— The judgment of the circuit court is affirmed.