The Chicago and Eastern Illinois Railroad Company

*v.*

Joseph Guertin.

*Filed at Ottawa January 25, 1886.*

1. Negligence—*fencing railroads—not on the right of way—duty and liability of the railroad company.* A railway company which erects a fence and gate along its right of way, a few feet beyond the same and upon the land of the adjoining owner, and keeps the same in repair for some time, and then suffers it to get out of repair, whereby stock escapes through the same and strays upon the track and is killed, can not escape liability to the owner of the stock on the ground such fence and gate are not on its right of way, when it has given no prior notice that it will not keep up such repairs any longer.

2. Same—*estoppel of railroad company to deny its liability to maintain a fence at a particular point, as, near its depot grounds.* Where a railway company has erected, and for a number of years maintained, a fence along

the side of and near its right of way, and near a station, but suffered it to become defective, whereby stock got upon its track and were killed, it can not exonerate itself from liability on the ground of its higher duty to the public of keeping its depot grounds open for the convenience of those having business with the road. So long as it permits such fence to stand and be relied on by others as a fence required by statute, it will be estopped from denying its duty to keep it in proper repair.

3. ·Evidence—*relevancy to issue.* In an action against a railway company to recover for the killing of animals, based on a neglect of the company to keep a gate in a fence built by it in repair, through which stock escaped and got upon the track, where they were killed, the defendant offered to prove that the erection of cattle-guards or a fence along its side-tracks would greatly endanger the lives of its employes, and inconvenience the public at large in loading and unloading cars from the side-tracks, and the cattle-guards would weaken the road bed, and'thereby endanger the lives of passengers: *Held,* that the evidence was properly excluded, as the neglect to make cattle-guards was not complained of as a ground of recovery.

4. Practice in the Supreme Court—*in case of appeals allowed by statute—and those only allowed upon certificate.* Where an appeal is perfected to this court, whether in cases given by the statute or in cases where it is allowed only upon the certificate of at least two of the judges of the Appellate Court that it involves questions of such importance that it should be passed upon by this court, the practice in this court is the same, and the appellant may assign any errors presented by the record. It is not necessary to certify to this court questions of law.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Kankakee county; the Hon. Franklin Blades, Judge, presiding.

Mr. William Armstrong, for the appellant:

On the question of the duty of railway companies to fence their tracks at their stations or depots not within incorporated cities and villages, see *Railroad Co.* v. *Dumser,* 109 Ill. 402; *Railroad Co.* v. *Chapin,* 66 id. 505; *Railroad Co.* v. *Willis,* 93 Ind. 507; *Railroad Co.* v. *Haus,* 111 Ill. 114; *Railroad Co.* v. *Campbell,* 47 Mich. 265; *Walton* v. *Railroad Co.* 67 Mo. 66; *Morris* v. *Railroad Co.* 58 id. 78.

Mr. C. R. STARR, for the appellee:

We do not see that this case involves the law of fencing railroads at a point where a side-track is located.   The neglect of duty alleged in the declaration under which a recovery is sought for the killing of the steer and colt, was that the defendant "suffered its gates and bars to get out of repair, by means whereof," etc.   The fence and gate were built by defendant, and it being defendant's fence and gate, it was its duty, to appellee, at least, to keep them in repair. If the fence and gate were off the right of way, the company built them as part of its fence, and no one ever changed it.

Mr. JUSTICE TUNNICLIFF delivered the opinion of the Court:

The appellee brought his action in case against appellant, in the Kankakee circuit court, and in various counts of his declaration sought to recover, first, for the destruction of three acres of timothy meadow, alleged to have been caused by appellant's locomotive having set fire to its right of way, which communicated with and destroyed the timothy stubble; second, for the killing of two steers by appellant's train on the crossing at Guertain street; and third, for the killing of two head of cattle and a stallion colt, which is alleged to have occurred in consequence of the railroad company having "suffered its gates and bars to get out of repair, and by means whereof they strayed upon the track, and were struck by appellant's locomotive, and killed."   A trial resulted in a verdict and judgment for appellee for $90, which judgment was affirmed by the Appellate Court for the Second District, and the judges of that court having certified that the case involved questions of law of such importance that it should be passed upon by this court, the appellants were allowed a further appeal.

The appellate judges have certified several questions of law to be passed upon.   This was unnecessary.   When an

appeal is perfected to this court, whether in cases where it is given by the statute as a matter of right, or in those cases where it is allowed only upon the certificate of at least two of the judges of the Appellate Court that it involves questions of such importance that it should be passed upon by this court, the practice here is the same in both cases, and the appellant may assign any errors of law which he may consider presented by the record. The case being properly in this court, the manner in which it was brought here is immaterial, and it will stand on the same footing as all other cases.

In this case the finding of the jury was general, without specifying upon which count or counts, or for what injury, they found the defendant guilty. But from the amount of the verdict, (which was less than the evidence tended to show the colt was worth,) as well as from the other evidence in the case and instructions of the trial court, and the presumptions that should prevail to sustain it, we conclude that the jury only found for the appellee damages for the killing of the colt.

The evidence tends to show that this colt had been running in appellee's pasture, east of the railroad track and grounds; that it escaped therefrom by reason of a defective gate in the fence, and got upon appellant's railroad track, and was struck by its locomotive, and killed. Appellant urges that it should not be held responsible, because the fence was not on the line of its right of way, and that it was not bound to fence the road at this point. It is true, this fence was a few feet from the line, and upon the grounds of appellee, but appellant had erected the fence and gate through which the colt had escaped, and kept it in repair a number of years and then neglected it. It had treated this fence and gate as part of that which the law required it to build along its right of way, and having done so, the appellee, we think, had the right to rely upon its maintaining it and keeping it in repair, and that it was its duty to do so until it had given him formal

notice that it considered itself absolved therefrom, and should no longer maintain or repair the same.

The statute requires that every railroad which has been in operation six months shall be fenced by the railroad company, suitably to prevent cattle, etc., from getting on the railroad, except at the crossing of public roads and highways, and within such portions of cities and incorporated towns as are platted into lots, with gates or bars at farm crossings, etc. (Sec. 1, act of 1874.) The place where the colt went through the defective gate upon the railroad track, was not one of those mentioned in the statute relieving the company of that duty—in other words, it was not one of the excepted places. *Prima facie*, then, it was the duty of the company to keep the fence and gate in repair at this point so as to prevent the escape of stock, and this duty they undertook to and did discharge for a number of years, but of late have neglected to do so. It now claims, as we understand it, that it should be excused from the performance of this statutory duty because of the counter and higher duty it owes to the public to keep its depot grounds open for the use and convenience of those having business with the road, in accordance with the principle announced in the case of *Chicago, Burlington and Quincy Railroad Co.* v. *Hans*, 111 Ill. 114. Whether the railroad company could not transact its business, and operate its cars with safety to its employes, or the convenience of the public be as well subserved, with or without this fence and gate remaining as it was originally erected, were questions of fact which the company ought to be estopped from controverting so long as it permits it to stand and be used and relied upon by others as a fence which the statute by its plain reading *prima facie* requires it to build and keep in repair,—certainly so until they have given notice to parties interested, to the contrary, and thus give them a reasonable opportunity to build their own fence.

The principal point, apparently, relied upon by counsel for appellant for a reversal, and which he has very ably and elaborately argued, concerns the exclusion of certain evidence offered on behalf of the company on the trial of the cause. The station and switch grounds of the company were adjacent to and extending north and south past the place where the fence and gate were, on its east side, and through which the colt escaped. Appellant offered to prove that the erection of cattle-guards, or a fence along its side-track, on these grounds, between its switch stands, one of which was north and the other south of the gate, would greatly endanger the lives of its employes, who would, in the transaction of its business, be compelled to switch cars on and along the side-tracks upon these grounds, and in attending to the switching would run great risk of being caught in the cattle-guards, and that such a fence and cattle-guards would greatly inconvenience the public at large in loading and unloading cars upon the side-track in the business of shipping freight, and that placing other cattle-guards there would weaken the road-bed so as to endanger the lives of passengers. A majority of the court are of the opinion that the evidence was properly excluded, for the reason that appellee's cause of action was not based upon the neglect of appellant to erect cattle-guards or build fences along its side-tracks or its station grounds, but, so far as any recovery was had, for a failure to keep in repair a fence or gate forming part of the same, already built at or near its right of way, by reason whereof appellee's stock escaped from his pasture and went upon appellant's track and was killed by its locomotive, and hence the evidence offered was immaterial to the issue being tried.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*