## Illinois Central Railroad Company v. George W. Davidson.

1. FENCES—*statute providing that railroad company shall maintain, construed.* This statute contemplates that a railway company shall fence both sides of its right of way through the entire length thereof except at places therein expressly exempted, and at public station grounds and other points where public conveniences require the same to be open; and further that at all crossings of it by all roads or highways, including railroads, and excluding farm crossings, it is required to construct and maintain cattle-guards and connect its fences therewith.

Action to recover damages for injury to personal property. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1905. Affirmed. Opinion filed March 20, 1906.

SHUTT, GRAHAM & GRAHAM, for appellant; JOHN G. DRENNAN, of counsel.

ROBERT H. PATTON, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action by appellee against appellant based upon paragraph 68 of chapter 114 of the Statutes, (Rev. Stat. 1903, page 1446) for the recovery of the value of live stock killed or crippled by one of the trains of appellant. Upon a trial by jury in the Circuit Court judgment was rendered against the defendant for $1,375 damages and $150 attorney's fees.

The section of the statute upon which the action is predicated is as follows:—

"That every railroad corporation shall, within six months after any part of its line is open for use, erect and thereafter maintain fences on both sides of its road, or so much thereof as is open for use, suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on such railroad, except at the crossings of public roads and highways, and within such portion of cities and incorporated towns and villages as are, or may be hereafter, laid out and platted into lots and blocks, with gates or bars at the farm crossings of such railroad, which farm crossings shall be constructed by such corporation when and where the same may become necessary, for the use of the proprietors of the lands adjoining such railroad; and shall also construct, where the same has not already been done, and thereafter maintain at all road crossings now existing or hereafter established, cattle guards, suitable and sufficient to prevent cattle, horses, sheep, hogs and other stock from getting on such railroad; and when such fences or cattle guards are not kept in good repair, such railroad corporations shall be liable for all damages which may be done by the agents, engines or cars of such corporation, to such cattle, horses, sheep, hogs or other stock thereon, and reasonable attorney's fees, in any court wherein suit is brought for such damages, or to which the same may be appealed; but where such fences and guards have been duly made and kept in good repair, such railroad corporation shall not be liable for any such damages, unless negligently or wilfully done."

The evidence tends to establish the following facts: The Illinois Central railroad crosses the Pawnee railroad at Pawnee Junction, Illinois, at right angles. The fences of the two companies join so as completely to enclose the crossing. There is no public or private road over the crossing, nor any opening for use of vehicles or stock, nor any means by which stock can lawfully get on the railroad crossing. The junction is a wayside station about which no open ground is maintained for depot purposes.

The questions involved will be more readily comprehended by referring to the following plat, a copy of which appears in the record.

The nearest point of appellee's pasture to the crossing of the railroads is a quarter of a mile from the crossing; that is, marked in the plat, as the corner of appellee's pasture, where the horses went from appellee's land to the Pawnee Railroad right of way. From this corner the animals went west a quarter of a mile to the Illinois Central Railroad right of way, then south along the same one mile, to a cattle guard at the first highway. They then turned and went north about a quarter of a mile to a place where they were killed. They did not get through any fence belonging to appellant at any time. The declaration contains two counts, both predicated on the theory that appellant was bound to place cattle guards and wing fences at each side of the Pawnee Railroad crossing.

It is contended by appellant that the statute quoted imposes on a railroad company no duty to build cattle guards and wing fences to prevent the possibility of stock straying to its right of way from the line of another railroad which crosses it at a point where there is no public highway, and stock cannot legally be, and therefore cannot reasonably be expected to come.

The facts above recited are not controverted and a determination of the correctness of appellant's position will be decisive of all questions urged or argued by counsel.

The first part of the section of the statute quoted, requires that a railroad shall maintain fences on both sides of its road except at the crossings of public roads and highways and such portions of incorporated cities and villages that have been laid off into lots and blocks. It has been held that at public station grounds and at such points where public convenience requires the road to be open, a railroad is not required, under the statute, to fence its road. R. Co. v. Guertin, 115 Ill., 466. That public convenience and the practical operation of railroads requires that places where the tracks of one railroad cross with another should remain open, is obvious. It follows that if the duty to maintain cattle guards at the crossing of its railroad with that of the

Pawnee railroad is imposed upon appellant by the section in question, it must be under the provisions of the latter part thereof, which in brief provides that railroads "shall also construct  *   *   *   and  *   *   *   maintain at all road crossings  *   *   *   cattle guards suitable and sufficient to prevent  *   *   *   stock from getting on such railroad."

We are not disposed to hold, as contended by appellant, that by the language "all road crossings," public highways only are meant. In view of the fact that in the part of the section relating to fencing, the expression "public roads and highways" is used, it may be fairly and reasonably presumed that by the use of the more general and comprehensive expression "at all road crossings" the provision, so far as it relates to cattle-guards, was intended to require the maintenance of the same at railroad crossings as well as other crossings. This construction seems to be supported and warranted by the further fact that in the portion of the section relating to fencing, the word "road" only is used. If the word "road," as used in the second part of the section, was intended to refer to public roads and highways only, it is difficult to perceive why the more restricted expression "public roads and highways" should have been adopted in another portion of the same section and not in this connection.

We are of opinion that the statute in question should be construed as meaning and intending that a railroad shall fence both sides of its right of way through the entire length thereof except at places therein expressly exempted, and at public station grounds and other points where public convenience requires the same to be open; and further that at all crossings of it by all roads or highways, including railroads and excluding farm crossings, it is required to construct and maintain cattle-guards and connect its fences therewith. Statutes should be construed according to their express terms except where such strict construction would interfere with the convenience of the general public. As we have said, it is manifest that public convenience does not

require that at the crossing of one railroad with another the rights of way of such railroads be left open. The object of the statute is not only to keep domestic animals off railroads, thus preventing injury to them and consequent damages to the owners, but to protect as well the lives and limbs of the traveling public.

If this be the correct view of the purpose of the statute, the questions whether or not the live stock in question were lawfully upon the premises adjoining the right of way, at what particular point they first got upon the right of way, and whether their presence there could have been reasonably expected, are immaterial.

The rulings of the trial court were in accord with the foregoing views and the judgment is therefore affirmed.

*Affirmed*