ULICKE, Administrator, Respondent, vs. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, Appellant.

*November 19, 1912—February 18, 1913.*

*Railroads: Fences: When embankment a sufficient protection: Statute construed: Defective fence: Death of boy unlawfully on track: Liability: Contributory negligence: Appeal: Questions of fact: Evidence: Presumptions.*

1. Whether or not, in a given case, under sec. 1810, Stats. (1898), an embankment is a sufficient protection to render a fence unnecessary to protect cattle or other domestic animals from straying on the right of way or track of a railroad, is a question of fact, and where the trial is by the court without a jury the finding upon that question will not be disturbed on appeal if the evidence will legitimately admit of the inference drawn.

2. An embankment does not become a substitute for a fence under said sec. 1810 unless it furnishes practically complete protection.

3. Said sec. 1810 does not require railway companies to build fences that shall be sufficient to prevent human beings from entering upon their rights of way.

4. Upon building a new right-of-way fence in place of an old one, a railway company is bound to conform to the statute, and if it fails to do so, even though the prior fence was a legal one, it stands in no better position than it would had there been no prior fence.

**5.** Even if the existence of a prior legal fence would be of advantage to the railway company in such a case, the burden of proving it a legal fence would be upon the company, and the court could indulge no presumption to that effect.

**6.** Where the want of a legal fence is responsible in whole or in part for an injury to animals or persons, sec. 1810, Stats. (1898), makes the railway company absolutely liable, and the mere fact that there had been an attempted compliance with the law will not open the door to the defense of contributory negligence.

**7.** The words "such fences" in said section refer to the "good and sufficient fences of the height of four and a half feet" which are made legal fences in the earlier part of the section; and the words "in good faith constructed" were intended to require the use of proper material and the proper kind of construction to make a substantial fence.

**8.** If a railway company elects to build a different kind of fence from that specifically described in the statute, it becomes a question of fact whether the substitute complies with the general requirement that the fence be "good and sufficient" and be four and one-half feet in height.

**9.** A fence constructed across the end of a street, at a point where defendant's railway tracks had been depressed in a city, had for a long time been partially torn down, leaving only the top strand of smooth wire about four feet from the ground; and a well-defined pathway led down the embankment from the street to the tracks. Plaintiff's intestate, a boy fifteen and one-half years old, having entered upon defendant's right of way (where he was killed by a train) by passing under the fence and following the path, the trial court was warranted in finding that his death was caused in whole or in part by the want of a statutory fence.

**10.** In such case neither a city ordinance making it unlawful for any person to enter upon the depressed roadbed or tracks, nor sec. 1811, Stats. (1898), which makes it unlawful to walk on a railroad track, will prevent a recovery for the death of the boy. [What the rule would be in the case of an adult, not decided.]

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

On June 19, 1911, John Ulicke was run down and killed by a passenger train on defendant's railway in the city of Milwaukee. This action is brought by plaintiff as admin-

istrator of the estate of the deceased to recover damages sustained by reason of the killing. The complaint alleges carelessness and negligence on the part of the defendant in failing to erect and maintain proper fences along its right of way at the point in question, in accordance with the provisions of sec. 1810, Stats. (1898). The testimony shows that on June 19, 1911, and for several years prior thereto, there had been a foot-path leading from what is known as Webster Place down an embankment about seventeen feet deep and across the railroad tracks of the defendant, and that this pathway was used by men and children as a short cut to near-by parks and to the lake. On the day of the accident the deceased and some of his boy companions had come from Webster Place down the embankment and were proceeding southward along the railway tracks when deceased was struck by a south-bound passenger train. The answer of the defendant put in issue all the allegations of the complaint. Judgment was rendered in the civil court of Milwaukee county in favor of the plaintiff, and this judgment was affirmed by the circuit court. Defendant appeals.

*Edward M. Smart,* for the appellant.

For the respondent there was a brief by *Glicksman, Gold & Corrigan,* and oral argument by *W. L. Gold.*

The following opinion was filed December 10, 1912:

BARNES, J. The principal contentions of the appellant are: It was not obliged to fence its right of way where the deceased entered thereon, because of the embankments on either side of the tracks; that if the necessity for fencing is eliminated, no other negligent act was shown; that if the defendant was negligent in other respects, the deceased should be held to be guilty of contributory negligence as a matter of law and therefore no recovery can be had; that assuming a duty rested upon the defendant to fence, it in good faith attempted to comply with that duty so as to be entitled to rely

on the defense of contributory negligence under sec. 1810, Stats. (1898), and that such defense is fatal to plaintiff's cause of action; and finally, that the ordinance requiring the defendant to depress its tracks made it unlawful for any person not an employee of the company to enter upon or walk along or across the depressed roadbed or tracks, as also did sec. 1811, Stats. (1898), and the deceased, being a violator of the law when he was injured, cannot recover.

Sec. 1810 reads as follows:

"Every railroad corporation operating any railroad shall erect and maintain on both sides of any portion of its road (depot grounds excepted) good and sufficient fences of the height of four and a half feet, with openings or gates or bars therein, and suitable and convenient farm crossings of the road for the use of the occupants of the lands adjoining, and shall construct and maintain cattle-guards at all highway crossings and connect their fences therewith to prevent cattle and other domestic animals from going on such railroad. All roads hereafter built shall be so fenced and such cattle-guards be made within three months from the time of commencing to operate the same, so far as operated. Until such fences and cattle-guards shall be duly made every railroad corporation owning or operating any such road shall be liable for all damages done to cattle, horses or other domestic animals, or persons thereon, occasioned in any manner, in whole or in part, by the want of such fences or cattle-guards; but after such fences and cattle-guards shall have been in good faith constructed such liability shall not extend to damages occasioned in part by contributory negligence nor to defects existing without negligence on the part of the corporation or its agents. A barbed wire fence consisting of not less than five barbed wires, with at least forty barbs to the rod, firmly fastened to posts, well set, not more than sixteen and one-half feet apart, with one good stay between, the top wire not less than forty-eight inches high and the bottom wire not more than eight inches from the ground, and the spaces between the bottom and second and second and third wires from the ground not more than eight inches each shall be deemed a good and sufficient fence; and no fence shall be required in

places where the proximity of ponds, lakes, watercourses, ditches, hills, embankments or other sufficient protection renders a fence unnecessary to protect cattle or other domestic animals from straying upon the right of way or track; provided, that nothing herein shall affect or render unlawful any fence built by any railroad company prior to the thirtieth day of March, 1881."

Whether a given pond, lake, watercourse, ditch, hill, embankment, or other protection is a sufficient protection to render a fence unnecessary is a question of fact. It may be proven by direct testimony, such as by showing that cattle do or did in fact pass over the barrier relied on and onto the right of way of the railway company. It may be established as the result of a conclusion or inference drawn from other facts. If the barrier relied on was a watercourse, and the evidence showed that it was narrow and shallow and had a hard bottom and that its banks had easy slopes, the inference would readily be drawn that such a watercourse was not a sufficient protection within the meaning of the statute, although no one had seen any animal cross it. Cases might arise where the sufficiency of the protection provided by the barrier relied on would be so obvious that a court would say as a matter of law that it was sufficient to dispense with the necessity of building a fence. In other cases the manifest insufficiency of the barrier relied on might be so apparent that a court should say as a matter of law that it was insufficient and did not constitute a substitute for a fence. Whenever we have a case which falls between these extremes we have a question of fact to be determined by a jury, if a jury is the trier of fact. Where as here there was a trial by the court, the conclusion reached will not be permitted to stand if against the clear preponderance of the evidence. It is only in cases where the evidence will not legitimately admit of the inference drawn that this court should assume the right to decide the question as a matter of law.

It is not a particularly easy matter here to determine

whether the embankment relied on was sufficient to protect cattle and other domestic animals from straying on the track. The propensities of different animals differ. The propensities of animals of the same species differ at different ages. The young colt or calf may become affrighted and go in places where an old horse or cow would not go. The goat is perhaps more of an explorer than most other domestic animals, particularly if there are any attractive looking tin cans in sight. Hungry or thirsty animals will go to places in search of food or water where animals that are neither hungry nor thirsty will not go. While the incline, and particularly that portion of it near the top of the embankment, is quite abrupt, and there was a drop of at least two feet in taking the first step, still we do not feel that this court should say as a matter of law that the embankment would deter cattle and other domestic animals from entering on the right of way. No doubt it ordinarily would, but this is not sufficient. We are not expert enough in the habits and customs of domestic animals to feel sufficiently assured that the civil and circuit judges were wrong in reaching the conclusion that the embankment was not sufficient to prevent domestic animals from entering upon defendant's right of way to warrant us in reversing the judgment on this ground. The embankment does not become a substitute for a fence unless it furnishes practically complete protection. *Veerhusen v. C. & N. W. R. Co.* 53 Wis. 689, 11 N. W. 433. As an original proposition this court probably would reach a different conclusion on this question of fact, but we cannot say that the contrary conclusion is without sufficient support in the evidence. We agree with counsel for the appellant that sec. 1810 does not require railway companies to build fences that are sufficient to prevent persons from entering upon rights of way.

Counsel argues that, conceding there was a duty to fence and that defendant was negligent in failing to keep its fence in repair, it can avail itself of the defense of contributory

negligence, because there was no absolute liability on its part under the statute. In support of this contention it is first urged that the right of way was fenced prior to the track depression, and, there being no evidence to show that such fence was not a legal one, the presumption is that it was, and that in any event there is nothing to show that such fence was not built prior to 1881. Counsel construes the statute to mean that, if at any time the defendant maintained a legal fence, it can forever thereafter rely on contributory negligence as a defense. We do not so construe the statute. This fence was completely rebuilt in 1904. The work of excavation necessarily required the removal of the old fence. When the defendant undertook to build an entirely new fence, it was obliged to comply with the statute, and if it failed to do so it stood in no different position than if no prior fence had ever existed. We do not think the statute means that after it has been complied with the fence can be taken away and another substituted which does not meet the requirements prescribed, and that absolute liability is avoided as to the insufficient fence. Appellant's claim is untenable for another reason. Respondent established the fact that the existing fence was not a legal fence. If it was of advantage to the appellant to show that at some time prior it had constructed a fence which complied with the law, it was the business of the appellant to prove such fact. It having been shown that the 1904 fence was not a legal structure, we do not think there was any presumption one way or the other as to the kind of a fence which had been maintained before.

It is next argued that the statute precludes the defense of contributory negligence only where there is an entire want of a fence, and that it does not do so where a substantial fence has been erected in good faith by the railway company. It is said that if a different construction is adopted the words "in good faith constructed" found in this statute are meaningless.

The statute requires railway companies to erect and maintain good and sufficient fences of the height of four and one-half feet, and provides that until such fences shall be made the company shall be liable for all damages to cattle, horses, or other domestic animals, or persons, occasioned in any manner in whole or in part by want of such fences. It seems plain that the words "such fences" refer to and mean the "good and sufficient fences of the height of four and one-half feet" mentioned in the preceding part of the section. If they do, then the statute creates an absolute liability where the fence does not conform to the statute and the want of a fence is responsible in whole or in part for the damage to domestic animals or persons. Following the part of the statute referred to is the proviso that "after *such* fences . . . shall have been in good faith constructed such liability shall not extend to damages occasioned in part by contributory negligence." Here again the words "such fences" refer to the good and sufficient fences four and one-half feet high which are made legal fences in the earlier part of the section. The words "in good faith constructed" were evidently intended to require the use of proper material in the construction of the legal fence and proper kind of construction so as to make a substantial fence. While the statute defines one kind of a fence that will be deemed sufficient in law, the railway company need not build this particular kind of a fence in order to comply with the statute. Any good and sufficient fence four and one-half feet in height fulfils the statutory requirement. But the height is absolutely fixed by the statute. If election is made to build a different kind of a fence from that specifically described in the statute, it becomes a question of fact to be determined whether the substitute complies with the general requirement that the fence be "good and sufficient" and be four and one-half feet in height. *Perrault v. M., St. P. & S. S. M. R. Co.* 117 Wis. 520, 94 N. W. 348. It may well be that the legislature should have differentiated

between a case where an attempted compliance with the law was made and one where it was entirely ignored, but we are unable to read any such distinction out of the existing statute.

It must be conceded that, had the fence been built four and one-half feet high instead of four feet, and had all of such fence been removed excepting the top wire, the accident would have happened, because a boy fifteen and one-half years old would be just as apt to crawl under a wire four and one-half feet from the ground as he would to crawl under one only four feet from the ground. The question is not, would the statutory fence with all but the top strand of wire removed be any more likely to prevent entry on the right of way than if such strand were six inches lower. The question is, Would a five-strand barbed wire fence be more likely to divert travel from the railway track than a single strand of smooth wire four feet from the ground? We cannot indulge in the presumption that the five-strand barbed wire fence would have been torn down simply because a different kind of a fence was. We think the court was warranted in finding that the death of the deceased was occasioned in whole or in part because of want of the statutory fence. The boy entered on the right of way from Webster Place. After the track depression this street did not cross the tracks, but all of the wires of the fence excepting only the top strand had been removed for nearly a year, and there was a well defined pathway leading down the embankment from Webster Place and onto the defendant's tracks. It was quite apparent that there had been considerable travel up and down this embankment and that a single strand of wire afforded no particular obstacle to such travel. It might well be that had such a barbed wire fence been maintained as that prescribed by statute it would have diverted travel at this point. If the court could say as a matter of law that the deceased would have gone onto the right of way had a legal fence been maintained, then its absence could not contribute in whole or in part to the injury.

But we are not prepared to say that, had the requisite fence been maintained, travelers would have customarily entered upon the right of way in such numbers as to leave a well defined beaten path, and neither can we say that this pathway, coupled with the removal of all the fence except the top strand of wire, did not create such a situation that the trial court was justified in finding that existing conditions induced the deceased to enter upon the track at this point.

Does the fact that the deceased entered upon the right of way in violation of the ordinance providing for the track depression in question and also in violation of sec. 1811, Stats. (1898), preclude a recovery?

The ordinance goes no farther toward preventing a recovery than the statute. It was held at an early day that recovery might be had for an injury to an infant who had not reached the age of discretion. *Schmidt v. M. & St. P. R. Co.* 23 Wis. 186; *Schrier v. M., L. S. & W. R. Co.* 65 Wis. 457, 27 N. W. 167. Later, recovery was permitted for injury to a boy ten years old and of average intelligence. *Schwind v. C., M. & St. P. R. Co.* 140 Wis. 1, 121 N. W. 639. In the present case the boy was fifteen years and seven months. Recovery was not allowed in the *Schwind Case* because the boy did not know of the danger to be apprehended from railway trains. It is safe to say that there are few boys of this age in a city like Milwaukee who do not. But recovery was allowed because it is said that young boys lack the pertinacity of purpose and the soundness of judgment of the adult and that their conduct is often controlled by propensities, temptations, curiosities, and obstacles which would not materially affect the adult. For these reasons it is held that recovery should be permitted in the case of a ten-year-old boy even though it might be denied in the case of an adult. The reasons stated are applicable to a boy of fifteen years of age as well as to one five years younger. One can appreciate the danger quite as well as the other, while the younger boy

may be more timid and consequently less reckless than the older. Boys of fifteen are quite as apt to be daring and thoughtless and to be actuated by a spirit of bravado and to court danger and run chances as are younger boys. At this age they have not accumulated a sufficient fund of common sense to overcome their propensities to recklessness. It is no extension of the doctrine or logic of the *Schwind Case* to hold that it applies here. The liability in case of an adult is left open in *Schwind v. C., M. & St. P. R. Co.* and in the later case of *Tunnison v. C., M. & St. P. R. Co.* 150 Wis. 496, 137 N. W. 781, and is also left open here.

Counsel for appellant urges that it has depressed its tracks at great expense so as to avoid dangerous grade crossings and enable it to run its trains with the speed and dispatch demanded by the public, and that after it has practically dug a ditch in which to operate its trains, and it is made unlawful for travelers to walk therein, it should be held that those who violate the law take their own chances and they should not be permitted to recover in case of injury. The legislature has endeavored to protect persons against their own foolhardiness by prohibiting them from walking on railroad tracks except in certain places where they have a right to be. It has also recognized the shortcomings and propensities of the ordinary run of human beings and has provided an additional safeguard against their dangerous habit of walking along railroad tracks, by requiring that such tracks be fenced. In order to make this requirement sufficiently onerous to insure observance of the duty imposed on the railroads, they were made absolutely liable in the event of their failure to observe the law, where such failure was responsible in whole or in part for the injury. This statutory requirement is in the interest of preserving human life and limb and should not receive any interpretation that would tend to weaken it, unless it is apparent that such interpretation was clearly within the legislative contemplation. The requirement to fence

would serve very little purpose in so far as it pertained to persons if it were held that the plaintiff in this case could not recover because of the legislative inhibition against walking on railway tracks. We conclude that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 18, 1913.