BEJMA, by guardian *ad litem,* Respondent, vs. CHICAGO & MILWAUKEE ELECTRIC RAILROAD COMPANY and others, Appellants.

*October 29—November 17, 1914.*
*March 26—April 13, 1915.*

*Railroads: Fences: Separate and independent entries by boy upon right of way: Injury not occasioned by first entry: Intersection of railroads: Overhead crossing: Duty as to fences: Construction of statute.*

1. The want of a fence at the place where a boy first entered upon a railroad right of way cannot be said to have occasioned, in whole or in part, an injury sustained by him after he had left such right of way and had entered upon it a second time at a different place, when it appears that he would have made the second entry even if he had not made the first.
2. Where one railroad crosses another by an overhead trestle, the elevated road exercises no control over the surface of the right of way of the lower road except such as is necessary for the support of its own roadbed; and in law as well as in fact there are two separate rights of way within their lines of intersection, the one above the other, each being independent of the other so far as the statute (sec. 1810, Stats.) requiring fences is concerned.

3. In such a case the provision in sec. 1810, Stats., requiring a railroad company to maintain fences on both sides of its road does not require the upper road to maintain fences across its own right of way at the sides of the right of way of the lower intersecting railroad; and within the limits of a city the upper road is not bound to maintain cattle-guards and wing fences in such a place, even if (which is doubted) the term "highway crossing," used in said statute, includes an intersection of two railroads.

4. Since it is evident that sec. 1810, Stats., did not aim to provide for a complete exclusion of animals and persons from the track everywhere, but has specified in detail where fences shall be erected and maintained, the court cannot by construction require fences to be built elsewhere, on the ground that they are needed there as much as where they are provided for in the statute. *Ulicke v. C. & N. W. R. Co.* 152 Wis. 236, distinguished.

TIMLIN, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

Action to recover damages for personal injuries sustained by plaintiff November 23, 1912, by reason of being run over by one of defendant's cars. The negligence of defendant relied upon to sustain a recovery was its failure to fence its road as required by sec. 1810, Stats. 1911. That section provides:

"1. Every railroad corporation operating any railroad shall erect and maintain on both sides of any portion of its road (depot grounds excepted) good and sufficient fences of the height of not less than fifty inches, with openings or gates or bars therein, and suitable and convenient farm crossings of the road for the use of the occupants of the lands adjoining, and shall construct and maintain cattle-guards at all highway crossings and connect their fences therewith to prevent cattle and other domestic animals from going on such railroad; provided, that the provisions of this section requiring cattle-guards shall not apply to any crossing located in a city or incorporated village.

"2. All roads hereafter built shall be so fenced and such cattle-guards be made within one month from the time of commencing to operate the same, so far as operated. Until

such fences and cattle-guards shall be duly made every rail-road corporation owning or operating any such road shall be liable for all damages done to cattle, horses or other domestic animals, or persons thereon, occasioned in any manner, in whole or in part, by the want of such fences or cattle-guards; but after such fences and cattle-guards shall have been in good faith constructed such liability shall not extend to damages occasioned in part by contributory negligence, nor to defects existing without negligence on the part of the corporation or its agents."

Within the corporate limits of the city of Milwaukee the defendant's road crosses the Chicago & Northwestern Railway near First avenue on a trestle elevated about twenty-seven feet above the Chicago & Northwestern Railway track and at an angle of about forty-five degrees or a little less. The defendant road ran north and south; the Chicago & Northwestern Railway ran in a northwesterly and southeasterly direction. An embankment on each side leads up to the trestle, the one on the south extending for a distance of some 500 feet. First avenue parallels the defendant's road on the west, and the beginning of the embankment coincides practically with the east boundary of the avenue. Plaintiff, a boy nearly twelve years old, lived southwest of the crossing. On the day of his injury he wanted to go to a pond on the east side of the defendant's road nearly opposite or perhaps southeast of his home. He went north on First avenue for the purpose of crossing under the trestle and intended to return south to the pond located on the east side of defendant's road. When he was within about twenty feet of the place where the south line of the Chicago & Northwestern Railway right of way intersects the defendant's right of way he left First avenue, traveled in a northeasterly direction, following a path, for about thirty feet, then along the Chicago & Northwestern Railway right of way in a southeasterly direction for some distance until he came on the east side of the trestle, when he saw some boys on the defendant's right

of way at the bottom of the embankment on the east side but
west of defendant's right-of-way fence at that place, and
about 300 feet south of the trestle, playing around a fire
they had built there.   He then concluded to go to the fire and
play with the boys, whereupon he re-entered the defendant's
right of way, climbed the embankment along a path that ex-
isted there, went south to the fire, and played with the boys.
After a while, noticing a work train of the defendant, he,
together with some of his playmates, climbed the embank-
ment, caught onto a car, rode a short distance, jumped off,
and, as he claims, shortly after he had jumped off and while
standing in a heap of gravel a companion of his jumped off
right in front of him, frightening him so that he fell in under
the wheels of the last car, losing one leg and severely injur-
ing the other.

Among the issues determined by the jury were these:
(1) That at and prior to the time of plaintiff's injury there
was a licensed path for footmen starting at the west line of
the right of way of the defendant company about twenty
feet south of the place where it intersects the south line of
the Chicago &. Northwestern Railway, thence running in a
northeasterly direction under the trestle of the defendant
company, thence easterly on the right of way of the Chicago
& Northwestern Railway beyond said trestle, thence southerly
onto the right of way of the defendant company; (2) that
plaintiff traveled along such path; (3) that plaintiff's injury
was occasioned in whole or in part by the absence of a fence
along the west line of defendant's right of way at the point
where the plaintiff traveled from First avenue to the trestle;
(4) that his injury was occasioned in whole or in part by the
fact that the defendant company had not fenced its right of way
at the points or point where the plaintiff entered thereon;
and (5) damages in the sum of $12,000.

Judgment upon the verdict was entered in favor of the
plaintiff, and the defendants appealed.

For the appellants there was a brief by *Edgar L. Wood,* attorney, and *Peter Fisher* and *Bull & Johnson,* of counsel, and oral argument by *Mr. Wood* and *Mr. Fisher.*

*C. W. Bradford,* for the respondent.

The following opinions were filed November 17, 1914:

VINJE, J.    The jury found that plaintiff traveled a well-beaten path which connected with First avenue about twenty feet south of the intersection of the defendant's right of way with the south line of the right of way of the Chicago &. Northwestern Railway, thence northeasterly to and upon the right of way of the latter road across the trestle and some distance beyond, when he again entered the right of way of the defendant, proceeded up the embankment and south to the place where the fire was, and from thence to the track, where he jumped onto the moving train and rode for a short distance and was injured in jumping off or immediately thereafter. They also found that defendant's failure to fence where plaintiff first entered its right of way occasioned in whole or in part his injury, and that it was also occasioned in whole or in part by defendant's failure to fence where he entered its right of way the second time.    For we must assume that in finding numbered 4 they found something additional to what was contained in finding numbered 3, and that such additional fact was that the failure to fence at the place of the second entry occasioned in whole or in part plaintiff's injury. They had already so found as to the failure to fence at the point of first entry.    The court in its charge to them speaks of the two entries made by the plaintiff, and it is a fact, so conceded by counsel for plaintiff in his brief and so found by the jury, that after plaintiff entered defendant's right of way he left it and went for some distance upon the right of way of the Chicago & Northwestern Railway, and then a second time entered the defendant's right of way and remained thereon till he was injured.    The question, therefore, arises whether

or not under the facts found and the evidence in this case there is any support for the finding of the jury that plaintiff's injury was occasioned in whole or in part by his first entry upon defendant's right of way. It is doubtful if in any case where there are two separate entries at different places upon a right of way by the same individual the first entry can be said to have occasioned in whole or in part the injury sustained by reason of remaining on the right of way after the second entry. In this case it is quite clear that the first entry had no part in causing the injury, for plaintiff said he was going to a pond on the east side of defendant's right of way some distance south of the trestle, and that he walked north for the purpose of crossing under the trestle; that as he came to the east side he saw some boys playing around a fire on defendant's right of way, and so he re-entered the right of way of the defendant and proceeded to the place of the fire, and later went upon the track and was hurt. No harm came to him by reason of his first entry. Assuming that a right of way is in all places a zone of danger, he had passed out of defendant's zone of danger when he entered that of the Chicago & Northwestern Railway right of way. Had he not re-entered he would not have been hurt by defendant. Under the evidence in this case plaintiff would have made the second entry even if he had not made the first. He wanted to cross under the trestle. He would undoubtedly have gone twenty feet further north on First avenue to do so had there been a fence at the place of the first entry. And had he gone north on First avenue and then to the east side of the trestle along the right of way of the Chicago & Northwestern Railway, he would have entered defendant's right of way just as he did if he wanted to go to play with the boys at the fire.. So under the facts of the case the first entry has no causal connection with his injury. Suppose he had entered defendant's right of way by climbing a legal fence, had left it again, and then had entered at a different place where

there was no fence but where one was required by the statute. Could it reasonably be claimed that a recovery could be defeated by the fact that he had first entered where there was a legal fence? It seems not. The converse of the proposition is equally true as applied to the facts in this case. And it must be so at least in every case where the second entry would be made independent of the first entry.

This brings us to the question of whether or not it was defendant's duty to fence where the second entry was made by plaintiff, namely, on the line of intersection between defendant's right of way and the south side of the right of way of the Chicago & Northwestern Railway. It may be urged that the right of way of the Chicago & Northwestern Railway is also the right of way of the defendant within the lines of their intersection. Whatever view might be taken of that proposition in a case of a grade crossing, we think it quite clear that where one road crosses another by an overhead trestle the elevated road exercises no control over the surface of the right of way of the lower road except such as is necessary for the support of its own roadbed, and that in law as well as fact there are two separate rights of way within their lines of intersection, the one above the other, each, so far as the fencing statute is concerned, being independent of the other. The statute (sec. 1810) requires that—

"Every railroad corporation operating any railroad shall erect and maintain on both sides of any portion of its road (depot grounds excepted) good and sufficient fences . . . and shall construct and maintain cattle-guards at all highway crossings and connect their fences therewith to prevent cattle and other domestic animals from going on such railroad; provided, that the provisions of this section requiring cattle-guards shall not apply to any crossing located in a city or incorporated village."

Independent of statute there was no duty to fence. The duty, therefore, is coextensive with the statute and ends where the statute ends. It will be observed that our statute, unlike

that of Kansas which requires the railroad to be *inclosed* with good and lawful fences (sec. 7005,. Gen. Stats. 1909), or that of Indiana which requires a railroad to be *securely fenced in* (sec. 5442, Burns' Ann. Stats. 1914), specifies in detail where fences shall be built and maintained.    They shall be erected on both sides of any portion of its road, depot grounds excepted.    There shall be wing fences to connect the side fences with cattle-guards at highway crossings except in cities and incorporated villages, and that is all.    When a railroad has erected and maintained lawful fences where the statute says it shall erect and maintain them, it has discharged the duty placed upon it by the statute.    Through no stretch of language can a fence across the right of way of a railroad at the foot of an embankment twenty-seven feet high on which the track is laid and supported by a trestle of equal height connecting it with the embankment on each side of the right of way of an intersecting road on the surface of the ground, be said to be a fence on the side of the road using the elevated trestle.    It is also very doubtful if the term "highway crossing" used in the statute includes the intersection of two railroads.    But if it does there would be no duty on the part of the defendant to maintain cattle-guards and wing fences at the place in question, even if the crossings were at grade, for it is within the limits of a city, where the statute does not require them.    But a lack of duty on the part of the defendant to fence the *locus in quo* does not mean the absence of a fence there.    It is evident that the intersection of the south side of the right of way of the Chicago & Northwestern Railway with that of the defendant constitutes a side of the road of the Chicago & Northwestern Railway, and the statute requires the latter to fence both sides of its road except depot grounds.    Had the Chicago & Northwestern Railway performed its statutory duty there would have been a fence where plaintiff last entered defendant's right of way.    If the statute is complied with by two intersecting railroads on grade, both

roads at the point of intersection will be completely fenced in, and that would be so in a crossing like the present, so far as the railroad crossing alone is concerned. The statutory duty to fence cannot be shifted by the courts from one road to another. It must rest where the statute has placed it. *Jones v. Milwaukee E. R. & L. Co.* 147 Wis. 427, 133 N. W. 636. And since it is evident the statute did not aim to provide for a complete exclusion from the track of animals and persons everywhere, but has specified in detail where fences should be erected and maintained, the court cannot by construction require them to be built elsewhere on the ground that they are needed there as much as where they are provided for by statute. To do so would be to enact and not to construe a law. In so holding we do not forget what was said in the case of *Ulicke v. C. & N. W. R. Co.* 152 Wis. 236, 139 N. W. 189, to the effect that the fencing statute was enacted for the purpose of protecting life and limb, and should receive a construction to accomplish that purpose whenever fairly consistent with the language of the act. Such undoubtedly is its purpose and such undoubtedly is the construction that should be given it wherever there is room for construction. But to construe the meaning of a statute in case of ambiguity or doubt is one thing; to add to the requirements of one where there is no doubt or ambiguity is quite another thing, and is outside the judicial field.

The following cases are specially relied upon by plaintiff to sustain defendant's duty to fence at the *locus in quo: Chicago, B. & Q. R. Co. v. Sevcek,* 72 Neb. 793, 799, 101 N. W. 981, 110 N. W. 639; *Union Pac. R. Co. v. Harris,* 28 Kan. 206; and *Ill. Cent. R. Co. v. Davidson,* 125 Ill. App. 420. In the Nebraska case the sole question was whether a certain place where hogs came upon the track constituted depot grounds so as to relieve the railroad company from the duty of fencing. The statute required the railroad company to erect and maintain fences on the sides of the railroad "suit-

able and amply sufficient to prevent cattle, horses, sheep, and hogs from getting on said railroad;" and the court upon the rehearing said: "The intention of the statute seems to be to require the complete inclosure of the railroad track by means of fences and cattle-guards so as to prevent access to the track at all points except public crossings." But this language was used in reference to the question under consideration, which was the duty to fence the sides of the track at a particular point, and it held there was no such duty because the place constituted depot grounds or a place where the public had a right of access to the track, though the statute made no exceptions in the case of depot grounds. The court *ex necessitate rei* interpolated the exception. In the Kansas case it was held that under a statute requiring the railroad track to be inclosed by good and lawful fences it must protect the track at highway crossings by cattle-guards and wing fences connecting them with the side fences, because the court stated that the track could not be said to be *inclosed* by the erection of side fences only. Our statute expressly provides for what the court construed the Kansas statute to require. The only point decided in the Illinois case was that its statute requiring railway companies to build wing fences and cattle-guards at all road crossings included railroad crossings. So these cases do not assist the court much in the construction of our own statute as applied to the facts in this case. The same is true of the cases of *Rozzelle v. H. & St. J. R. Co.* 79 Mo. 349; *Kelver v. N. Y., C. & St. L. R. Co.* 12 N. Y. Supp. 723; and *Marengo v. G. N. R. Co.* 84 Minn. 397, 87 N. W. 1117, cited to the point that where two or more railways run parallel with each other at places where it is the duty of each to fence, the failure of one to do so, or its compliance with the statutory duty, does not excuse the other. Here the question is, Was the defendant required to fence the *locus in quo?* If not, then its nonliability cannot be affected by the liability of others.

The result reached upon the merits as applied to the present

defendant renders it unnecessary to discuss the other errors assigned.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for defendants dismissing the complaint upon the merits.

TIMLIN, J. (*dissenting*). I am unable to concur in the disposition of this case. The decision is not in line with decisions of this court heretofore made under the same statute and is attempted to be supported by what seem to me the most technical and unsatisfactory arguments. The facts are: That one railroad track crosses another nearly at right angles upon an overhead crossing of sufficient height. Each track is in the middle or about the middle of a right of way considerably wider than the track or embankment at all points along the track. This decision is that the lower railroad retains its right of way for the full width at such crossing. Such right of way of the lower road at this point was unfenced. Instead of holding that the right of way of the upper road continues in its full width across the right of way of the lower road, the upper road, which injured the boy and which was unfenced, is allowed to escape from under the fencing statute because it does not use its whole right of way or its whole easement at this point for a crossing. So that both roads escape liability; the lower road because the boy was not injured on its track by its cars and did not in the first place enter upon its right of way when he left the highway, and the upper road because its tracks cross the lower road at an elevation in the manner described, although both roads are unfenced at and near the point where the boy entered upon the right of way of the defendant road. The second so-called entry upon this right of way by the boy is figured out in this way:

Leaving the public highway he entered upon defendant's unfenced right of way at a point a few feet from where its right-of-way fence, if it had one, would have connected with the right-of-way fence of the road crossing below it, if the lat-

ter road had one.   Walking a short distance he came upon
the ground where the rights of way overlap and cross.   From
this ground which carried the double easement of both roads
he walked into and along the right of way of the defendant
road after having crossed under the trestle over which the
defendant's track crossed the other railroad.   This is sup-
posed to be his second entry.   If both of these railroads ob-
served the statute and maintained fences along their respective
rights of way, the fences would necessarily connect at an angle
equal to that formed by the crossing of the rails but at the
proper distance therefrom and would be continuous.   This is
what the statute requires.   This is included in the simple
command that each fence its right of way.   Here; because
neither fenced its right of way at all near the crossing of both
roads, the defendant road escapes liability although the fact
is established that the boy entered upon defendant's right of
way from the highway at a point where it was the duty of
defendant to maintain a fence.

At this point the opinion seems to go partially on the theory
that, because the underlying railroad had not fenced, the de-
fendant's fence would not connect up with anything and the
boy might or could have passed around the end of defendant's
fence.   I think this amounts to holding that although one
railroad may not leave its right of way unfenced two railroads
may accomplish this disregard of statute at a crossing by each
failing to fence.   I regard as extremely novel the theory that
the right of way of a crossing railroad is narrowed to the
trestle upon which it crosses wherever it crosses another road
by overhead crossing.   I think the duty to fence and the de-
linquency on the part of the defendant were shown, and that
it was a question for the jury whether the plaintiff's injury
was "occasioned in any manner in whole or in part by the
want of such fences" (sec. 1810, Stats.).   *Ulicke v. C. & N.
W. R. Co.* 152 Wis. 236, 139 N. W. 189; *Schwind v. C., M.
& St. P. R. Co.* 140 Wis. 1, 121 N. W. 639.

In the foregoing case, and also in the case of *Bejma v. Johnson, post,* p. 540, the respondent moved for a rehearing. In support of the motions there were briefs by *C. W. Bradford,* attorney, and *Christian Doerfler,* of counsel; and in opposition thereto briefs by *Edgar L. Wood,* attorney, and *Peter Fisher* and *Bull & Johnson,* of counsel.

The motion was granted on February 9, 1915, and the causes were reargued on March 26, 1915.

For the appellants there was a brief by *Edgar L. Wood,* attorney, and *Bull & Johnson* and *Peter Fisher,* of counsel, and oral argument by *Mr. Wood* and *Mr. Fisher.*

*C. W. Bradford,* attorney, and *Christian Doerfler,* of counsel, for the respondents.

The following opinion was filed April 13, 1915:

VINJE, J. Upon the rehearing the correctness of the court's ruling that it was not incumbent upon the defendant to fence the sides of the right of way of the Chicago & Northwestern Railway beneath and across its own right of way is not questioned. But it is argued the court erred in holding that plaintiff's first entry upon defendant's right of way did not contribute in whole or in part to his injury. His counsel urges upon us, and the evidence sustains him in so doing, that it was plaintiff's fixed intention to proceed along First avenue to the trestle, to pass under and beyond it, to go up the embankment upon the defendant's right of way, and thence proceed to Beaver's pond. He started on his trip and left First avenue about twenty feet sooner than he would have done had defendant's fence on that side been built, as it should have been, up to the side of the right of way of the Chicago & Northwestern Railway, and cut diagonally over on to the latter's right of way, walked along it for some distance, then re-entered defendant's right of way, and proceeded up the embankment as intended. Concretely stated the proposition advanced by counsel is this: that a boy twelve years old with a

fixed intention of going to a certain place for a holiday outing would not go there if he had to travel the two twenty-foot sides of a right-angled triangle instead of the hypothenuse— the traveling on the two sides being as good as that along the hypothenuse. The statement of the proposition is a sufficient refutation thereof. We adhere to our former decision.

